[No. 7,058.—Department One.]

# THE AMADOR CANAL AND MINING COMPANY *v.* THOMAS MITCHELL ET AL.

JURISDICTION — FORECLOSURE — BANKRUPTCY — PRACTICE.— The Court in which an action is pending, can not take judicial notice of proceedings in bankruptcy subsequently commenced, however seriously they may affect the rights of the parties to the suit. It is the duty of the Court

to proceed to a decree as between the parties before it, until by some proper pleading in the case it is informed of the changed relations of any of those parties to the subject-matter of the suit.

ID.—ID.—ID.—ID.—PENDENCY OF ACTION.—A judgment in an action to foreclose a mortgage lien upon land, binds all the estate in the land which was held by the parties defendants to the action, at the commencement of the action, or which they or any of them may sell to a third person, *pendente lite*, with notice of the action; and purchasers *pendente lite* are estopped from questioning it, unless it was taken against them by the mistake, inadvertence, surprise, or excusable neglect of any of the defendants, to whose interest in the mortgaged premises they have succeeded; or unless it was taken by collusion or fraud.

ID.—ID.—IMPEACHMENT OF JUDGMENT FOR FRAUD.—Judgments are impeachable for those frauds only which are *extrinsic* to the merits of the case, and by which the Court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties. The fraud must be fraud occurring on the procurement of the judgment, which was not known to the party at the time, and for not knowing which he is not chargeable with negligence.

ID.—ID.—ID.—ID.—ID.—ID.—ID.—S. & Co. mortgaged (by two mortgages) to M., the B. ditch and three others; and pending an action to foreclose (in which a notice of *lis pendens* had been filed), the title to the B. ditch became vested by mesne conveyances from the mortgagors in the S. C. & M. Co. The S. C. & M. Co. was adjudicated a bankrupt, and an assignment made of its property, including the B. ditch. M. presented a claim upon the two mortgages against the estate in bankruptcy, but afterwards on his petition it was ordered by the United States District Court that M. should have leave to foreclose; that the assignee should be made a party defendant to the foreclosure suit; and that before proceeding to sell the B. ditch, the other ditches should first be sold. Afterwards, the B. ditch was sold by the assignee under the order of the United States District Court, subject to the mortgage of M., and the plaintiff became the purchaser. Afterwards in the foreclosure suit—to which the assignee had not been made a party—it was stipulated by the parties that the judgment should be taken for the foreclosure of the B. ditch only, and the other ditches released, and judgment having been entered accordingly, M. became the purchaser under the foreclosure sale. In an action to vacate the sale and the judgment:

*Held*, that the plaintiff purchased of the assignee subject to the mortgages and with notice of the pendency of the suit to foreclose, and that the judgment was binding upon it.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial in the Eleventh District Court, County of Amador. WILLIAMS, J.

This is an action to vacate a judgment and decree of foreclosure of two mortgages, under which the defendant, Thomas

Mitchell, purchased a portion of the mortgaged property, on the ground of fraud.

*H. J. Tilden,* for Appellants.

Where a purchaser of a portion of mortgaged property deducts and retains from the purchase price the amount due on the mortgage, the portion so purchased is primarily liable for the mortgage debt, and in case of a foreclosure must be first sold. (2 Leading Cases in Equity, note to case of *Aldrich* v. *Cooper,* 241, 242; 1 Hilliard on Mortgages, 362–364; 2 id. 243; *Ferris* v. *Crawford,* 2 Denio, 595; *Halsey* v. *Reid,* 9 Paige, 446; *Marsh* v. *Pike,* 10 id. 595; *Cornell* v. *Prescott,* 2 Barb. 17; *Russell* v. *Pistor,* 7 N. Y. 171; *Hart* v. *Wadle,* 50 id. 381.)

As to notice. The president and one of the directors of the corporation plaintiff were informed of the agreement of the prior purchaser to pay the amount of Mitchell's mortgages prior to and while negotiating their purchase; and hence, the plaintiff had notice of the same. (Civil Code, §§ 18, 19, 233; Angell & Ames on Corporations, §§ 305, 306; *Smith* v. *South Royalton Bank,* 32 Vt. 343; *Holden* v. *N. Y. & Erie Bank,* 72 N. Y. 291; *Lothian* v. *Wood,* 55 Cal. 159; *Blen* v. *Bear River M. Co.,* 20 id. 602. *Fairfield Savings Bank* v. *Chase,* 11 Reporter, 809.)

But even if there had been no actual notice, an assignee takes only such interest and rights as the bankrupt had, and subject to all equities against the property, and the purchasers at the assignee's sale take subject to the same rights and equities. The mortgages were recorded, action to foreclose pending, and *lis pendens* filed and recorded, prior to the commencement of bankruptcy proceedings, and the order under which plaintiff purchased, specially referred to the mortgages and directed the sale subject thereto. (2 Sugden on Vendors, top page 395, and note q; *Mitford* v. *Mitford,* 9 Ves. Jr. 100; 2 Story's Equity, § 1228; 2 Hilliard on Mortgages, 529; *Murry* v. *Lylburn,* 2 Johns. Ch. 443; *Barnard, Assignee,* v. *Norwich and Worcester R. R. Co.,* 14 Nat. Bank. Reg. 469; *Gibson* v. *Worden,* 14 Wall. 248; *Cook* v. *Tullis,* 18 id. 341; *Yeatman* v. *Savings Institution,* 5 Otto, 766; *Vanheusen* v. *Radcliff,* 17 N. Y. 582; 2 Leading Cases in Equity, note to

case of *Basset* v. *Nosworthy*, side page 21, top page 72.)   The assignee had a right to appear and defend the foreclosure proceedings without any order of the United States District Court.  (Revised Statutes of United States, § 5047; *Eyster* v. *Gaff*, 91 U. S. 524.)

The orders of the United States District Court, directing Mitchell to prove his claim, and that the assignee sell the Kellum ditches first, were void.

1. Because Mitchell was not a creditor of the bankrupt; he had a lien on the property, to be sure, but no claim against the bankrupt estate.  The only parties to bankruptcy proceedings are the bankrupt, assignee, and creditors of the bankrupt.

2. Because the Court had no jurisdiction over Horn and Stickles, who owned the Kellum ditches, nor any power or authority to foreclose the mortgages.

The questions of the rights of the parties could only be litigated in a separate and independent action, when all persons interested in the property should be made parties to the suit. (*Eyster* v. *Gaff*, 91 U. S. 521; *Marsh* v. *Armstrong*, 11 Nat. Bank. Reg. 126; *Smith* v. *Mason*, 14 Wall. 419; *Marshall* v. *Knox*, 16 id. 551; *McLene, Assignee*, v. *Lafayette Bank*, 3 McLean, 415; *In re Casey*, 8 Nat. Bank. Reg. 77.)

The State Court having acquired jurisdiction could not be ousted or controlled by any order of the United States District Court.  (See cases last cited, and *Peck* v. *Jenness*, 7 How. 624; *In re Daggett*, 8 Nat. Bank. Reg. 433; *Orton* v. *Smith*, 18 How. 263; *Taylor* v. *Carryl*, 20 id. 596.)

The evidence and findings show that the Butte Ditch was primarily liable, and bound in equity to pay the mortgages, and that the plaintiff knew that fact when it purchased, and plaintiff purchased subject to said mortgages.   Courts will not set aside decrees when no injury has been done. (*Patterson* v. *Donner*, 48 Cal. 378.)

To entitle a party to relief from a judgment or decree, it must be made evident that he had a defense, and that such defense has been lost to him without any omission, neglect, or fault.  (Freeman on Judgments, § 486; *Mastick* v. *Thorp*, 29 Cal. 445.)

If the Sutter Canal and Mining Company had remained

solvent, it could not have maintained this action, and the assignee had no better remedy than the bankrupt. (*Jones* v. *Yates*, 9 Barn. & Cress. 532.)

*Porter & Farley* and *A. C. Adams*, for Respondent.

A *bona fide* purchaser of a legal title is not affected by any latent equity founded on a trust, fraud, or otherwise, of which he had no notice, actual or constructive. (*Scott* v. *Burton*, 2 Ashm. 312; *Love* v. *Braxton*, 5 Call, 537; *Cressy* v. *Phelps*, 2 Root, 420; *Willis* v. *Henderson*, 5 Ill. 13; *Price* v. *Walters*, id. 35, and other cases.)

To affect a purchaser of real estate with notice of an outstanding equity, his knowledge of it must clearly appear. (*Wilson* v. *Miller*, 16 Iowa, 111.)

Knowledge of a Director, acquired outside of his duties as such, and undisclosed to the Board, is not notice to the corporation. (*United States Ins. Co.* v. *Shriver*, 3 Md. Ch. 381; *Mercier* v. *Canonge*, 8 La. Ann. 37; *Foundry* v. *Dart*, 26 Conn. 376.)

The *lis pendens* was notice of the action to foreclose mortgages, not only on the Butte Ditch, but three other ditches, while in fact the mortgages were enforced only against the Butte Ditch.

*H. J. Tilden*, in Reply:

Plaintiff can not claim the benefits of the purchase by them through their President and agent, and at the same time claim that notice to such agent while negotiating the purchase is not notice to the plaintiff. The same rule applies to agents of corporations as to agents of individuals. (Wade on Law of Notice, §§ 672, 675, 676, 681, 685, and 687; *Crowley* v. *Genesee M. Co.*, 55 Cal. 273.)

When the title is cast upon an assignee by operation of law, he is not a *bona fide* purchaser, but takes as a mere volunteer, and can give no better title to a purchaser from him, than the bankrupt had. (*Smith* v. *Perry*, 56 Ala. 266; *Steadman* v. *Taylor*, 77 N. C. 134; *Goss* v. *Coffin*, 66 Me. 432; *Carr* v. *Fearington*, 63 N. C. 560; *Mitchel* v. *Winslow*, 2 Story's C. C. 637; 2 Story's Eq. Jur., § 1229–1411; *Stewart* v. *Platt*, 101 U. S. 738; *Lloyd* v. *Foley*, 5 P. C. L. J. 479.)

It would have been an idle act to have made the assignee a party to the foreclosure proceedings, as after the assignee's sale he had no interest whatever. (*Jerome* v. *McCarter*, 94 U. S. 734.)

Equity will not set aside a judgment to enable a party to set up an unjust claim; nor when a party has by his own laches failed to present his claim or defense; nor when the plaintiff has not been defrauded. (*Preston* v. *Hill*, 38 Cal. 686; *Gregory* v. *Ford*, 14 id. 138.)

McKEE, J.:

The respondent and plaintiff in the action, out of which this case arises, claims title to the premises in controversy, by purchase at a judicial sale of the property, under an order, made by the United States District Court for the District of California, on January 28th, 1873, authorizing the assignee in bankruptcy of the estate of the Sutter Canal and Mining Company—a bankrupt corporation—to sell all the right, title, and interest of the estate in the property, subject to two mortgages which the defendant Mitchell had upon it.

Under that order the premises in dispute, known as the "Butte Ditch or Canal," were sold to the respondent by the assignee, on July 17th, 1873, "subject to said mortgages." The sale was confirmed on August 6th, 1873, by the United States District Court; and the assignee was directed to execute and deliver to the respondent, as purchaser, a proper conveyance of the property—the "Butte Canal"—which was done, on October 18th, 1873, in pursuance of the orders of sale and confirmation.

When the respondent purchased the property, it took whatever title it acquired "subject to the mortgages" of the appellant, Mitchell, and with notice that an action was then pending in the District Court of Amador County for the foreclosure of those mortgages. For Mitchell had commenced an action to foreclose on April 6th, 1870, by filing his complaint in the District Court of Amador County, and issuing a summons thereon against the mortgagors, namely: William Stickles, C. D. Horn, A. M. Harris, and Isaac and G. S. Tripp, composing a copartnership, known as the Butte Ditch Company, and Joseph Baptiste and William Wells; and, at the time of filing

the complaint, he also caused to be filed and recorded, in the office of the County Recorder of Amador County, a notice of *lis pendens,* according to law.

The mortgages upon which that action was commenced were given by the defendants named in the complaint of foreclosure, to secure payment to Mitchell of two promissory notes for the sum of six thousand dollars, upon the following described property:

"1. The Butte Ditch, commencing at the Old Pine Log crossing on the North Fork of the Mokelumne River, conveying water thence to Slabtown, Butte City, and other localities in said Amador County; also to the vicinity of Jackson, Scottsville, and other points in said Amador County.

"2. That other ditch known as the Upper Kellum Ditch, taking water from the South Fork of Jackson Creek, opposite to said Slabtown, and conveying it thence to the vicinity of said Butte City and other points in said Amador county, and being about five miles in length.

"3. That other ditch, known as the Lower Kellum Ditch, taking water from said South Fork of Jackson Creek, at a point below the head of the last-mentioned ditch, and conveying the same to the vicinity of said Butte City and other points in said Amador county.

"4. That other ditch known as the Middle Fork Kellum Ditch, taking water from the middle fork of said Jackson Creek, about a half a mile below Irishtown, and conveying it to said Butte City and other points in said county. Together with all the flumes, aqueducts, branch ditches, reservoirs, pipes, and cabins connected with all of the ditch property above mentioned."

Pending that action the mortgagors, or some of them, on July 15th, 1870, sold and conveyed the first portion of said mortgage premises, viz., the "Butte Ditch"—the premises in controversy—to one Bowman in part consideration of his assumption of, and agreement to pay, the Mitchell mortgages, within thirty days from the sale; and Bowman afterward, on July 16th, 1870, sold and conveyed the same property to the Sutter Canal and Mining Company. At the time that the Company purchased the "ditch," one of their directors knew of the agreement by Bowman to pay off the mortages

upon the property; and the same fact was known to the President of the respondent when he purchased the property, for the respondent, at the assignee's sale. Bowman, however, failed to pay; and in March, 1872, the Sutter Canal and Mining Company was, by decree of the United States District Court, declared a bankrupt; and an assignee was appointed, to whom, on May 2d, 1872, an assignment was made of all the property of the bankrupt, including the "Butte Ditch."

Pending the proceedings in bankruptcy, Mitchell was advised that it was necessary for him to present a claim upon the mortgages, against the estate in bankruptcy of the company, to the United States District Court for allowance. Acting upon that advice he did present to that Court his promissory notes and the mortgages given to secure payment thereof, and his claim was indorsed "recognized and allowed." But, afterward, becoming satisfied that he had been improperly advised, he petitioned the Court, in which the claim had been allowed, for leave to withdraw it, and to proceed with his foreclosure suit to judgment and sale; and, on December 20, 1872, the Court granted his petition by the following order, viz.:

"It is, on motion of Messrs. Higby & Seely, attorneys for said Mitchell, the attorneys for the other parties respectively having been heard, ordered that said Thomas Mitchell have leave, and leave is hereby granted to him, to foreclose the two mortgages owned and held by him, mentioned in the petition filed in this Court by him on the 26th day of November, A. D. 1872; and that the assignee in this proceeding be made a party defendant in said foreclosure suit; and that the Kellum ditches mentioned in said Mitchell mortgages, and all property connected or in any way belonging thereto, be first sold before proceeding to sell the property mentioned in said mortgages in which said bankrupt has an interest; and that said Mitchell be permitted to deduct from the proceeds of said sale a sum sufficient to pay the balance due on said mortgages according to the terms and conditions thereof; and that the moneys realized from the sale of said Kellum ditches and property connected therewith be first applied toward the payment of said amount, and if the proceeds of the sale of

all of said property should be in excess of the amount due the said Mitchell as aforesaid, then that the overplus, if any there be, shall be deposited in this Court to the credit of said bankrupt estate."

After the entry of that order, Mitchell, on September 8, 1873, filed a supplemental complaint in the foreclosure proceedings, to which the assignee in bankruptcy was not made a party, and caused a summons to be issued thereon against the defendants named in the original complaint, which was served upon them; and they appeared in the action and filed a motion to dismiss the action for want of diligence in its prosecution. But, pending that motion, they and Mitchell stipulated that the motion shall be withdrawn; that Mitchell shall take judgment for the foreclosure and sale of the "Butte Canal" only; that the other ditches, known as the Kellum ditches, shall be released from the lien of the mortgages; and that no judgment over for deficiency shall be entered or enforced against the defendants. In pursuance of that stipulation, judgment was entered on October 13, 1873, for the foreclosure of the mortgages and the sale of the "Butte Canal" to satisfy the mortgage debt, under which the property was sold and transferred to Mitchell; and the respondent who had purchased at the sale of the assignee in bankruptcy, now claims in this action, that the certificate of purchase issued to Mitchell is void and should be canceled, and that the sale of the premises, under the judgment of foreclosure, is also void, and should be set aside, because the judgment was taken in fraud of the rights of the assignee in bankruptcy, and also in fraud of the rights of the respondent, and in violation of the order of the United States District Court of December 20, 1872. Therefore, he asks that the certificate of purchase be canceled; that the sale be set aside, and that the judgment of foreclosure be vacated and annulled.

But the order of December 20th, 1872, was an act of supererogation; it was wholly unnecessary under the bankrupt law to enable Mitchell to proceed with his foreclosure suit to judgment and sale. The suit was pending in a court of competent jurisdiction, and Mitchell was entitled as matter of right to prosecute it without any order from any other Court. Neither

the jurisdiction of the Court nor the right of Mitchell was in any way affected by the order of the 20th of December, 1872. As Mr. Justice Miller remarks in *Eyster* v. *Gaff*, 91 U. S. 524: "The Court had acquired jurisdiction of the parties, and of the subject-matter of the suit.  It was competent to administer full justice.  * * *  It could not take judicial notice of the proceedings in bankruptcy in another Court, however seriously they might have affected the rights of parties to the suit already pending.  It was the duty of the Court to proceed to a decree as between the parties before it, until by some proper pleadings in the case it was informed of the changed relations of any of those parties to the subject-matter of the suit.

"The opinion seems to have been quite prevalent in many quarters at one time that the moment a man is declared bankrupt, the District Court, which has so adjudged, draws to itself by that act, not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other Court, except in so far as the Circuit Courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person, who contested with the assignee any matter growing out of disputed rights of property or of contracts, into the bankruptcy court by the service of a rule to show cause and to dispose of their rights in a summary way.  This court has steadily set its face against this view.

"The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary."  See also, *Orton* v. *Smith*, 18 How. 263 ; *Taylor* v. *Carlyl*, 20 id. 596.

The order of the 20th of December, 1872, therefore, imposed upon Mitchell no duty to the bankrupt or its assignee, especially after that order had been, in effect, abrogated by the subsequent order of the same Court, under which the interest of the bankrupt in the property in controversy was sold to the respondent.  After that sale and the confirmation thereof the bankrupt had no longer any interest in the property, and the assignee had no longer any duties to perform in

connection with it, and he was neither a necessary nor a proper party to the pending foreclosure suit. The respondent, as the successor in interest to the bankrupt, was the only party concerned in the suit. But having purchased subject to the mortgages, and with notice of the pendency of the suit to foreclose them, it became bound by the notice to appear in the action and defend the interest which it had acquired. (*Corwin* v. *Bensley*, 43 Cal. 259; *Eyster* v. *Gaff, supra.*) If it neglected that duty, any judgment rendered in the action would bind the estate in the property which was purchased with notice of the action. (*Calderwood* v. *Tevis*, 23 Cal. 336; *Hurlburt* v. *Butenop*, 27 id. 50.) For a judgment in an action to foreclose a mortgage lien upon land binds all the estate in the land which was held by the parties defendants to the action, at the commencement of the action, or which they or any of them may sell to a third person *pendente lite* with notice of the action; and they are estopped from questioning it, unless it was taken against them by the mistake, inadvertence, surprise, or excusable neglect of any of the defendants, to whose interest in the mortgage premises, the subsequent purchaser had succeeded; or unless it was taken by collusion or fraud.

The judgment has never been assailed from within. No application has been made to re-open the case on the grounds of mistake, inadvertence, surprise, or excusable neglect. No motion for a new trial has been made in the case. No appeal has been taken in it. The judgment of foreclosure is therefore binding and conclusive, not only on the respondent, but on any other Court into which it may come, notwithstanding the order of the 20th of December, 1872. "It is," says the Supreme Court of the United States, in *Peck* v. *Jenness*, 7 How. 624, "a doctrine of law, too long established to require the citation of authorities, that where a Court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding on every other Court."

Of course such judgment may be impeachable for fraud and collusion; and the respondent charges that the judgment under consideration was taken in fraud of the rights which

it acquired in the property, and of the rights of the assignee in bankruptcy. But the Court below found, "that the said Mitchell, in entering into the stipulation for the release of the three Kellum ditches from the foreclosure suit in this Court, had no fraudulent agreement or understanding with any one. That said Mitchell, in entering into said stipulation for the release of said Kellum ditches from the foreclosure suit, was not guilty of any fraud or wrong, except so far as the same was a violation of the order of the United States District Court, made on the 20th of December, 1872, on the motion of said Mitchell."

This finding leaves the respondent no equity whatever. For judgments are impeachable for those frauds only which are *extrinsic* to the merits of the case, and by which the Court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties. All mistakes and errors must be corrected from within by motion for a new trial, or to re-open the judgment, or by appeal. In the language of De Grey, Chief Justice, "If the judgment is a direct and decisive sentence upon the point, and, as it stands, to be admitted as conclusive evidence upon the Court, and not to be impeached from *within,* yet like all other acts of the highest judicial authority, it is impeachable from *without.* Although it is not permitted to show that the Court was mistaken, it may be shown that they were misled. Fraud is an extrinsic collateral act, which vitiates the most solemn proceedings of courts of justice." *(Duchess of Kingston's Case,* 20 Howell's State Trials, 554.) "The fraud," say the Supreme Court of New York, "which will justify equitable interference in setting aside a judgment or decree must be actual and positive, not merely constructive; it must be fraud occurring in the conception or procurement of the judgment or decree which was not known to the party at the time, and for not knowing which he is not chargeable with negligence." *(Ross* v. *Wood,* 70 N. Y. 8.)

Judgment reversed and cause remanded.

ROSS, J., and MCKINSTRY, J., concurred.