## UNITED STATES *v.* THROCKMORTON.

1. It is essential to a bill in chancery on behalf of the United States to set aside a patent for lands, or the final confirmation of a Mexican grant, that it shall appear in some way, without regard to the special form, that the Attorney-General has brought it himself, or given such authority for bringing it as will make him officially responsible therefor through all stages of its presentation.

2. The frauds for which a bill to set aside a judgment or a decree between the same parties, rendered by a court of competent jurisdiction, will be sustained, are those which are extrinsic or collateral to the matter tried, and not a fraud which was in issue in the former suit.

3. The cases where such relief has been granted are those in which, by fraud or deception practised on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has never been a real contest before the court of the subject-matter of the suit.

4. The Circuit Court of the United States has now no original jurisdiction to reform surveys made by the land department of confirmed Mexican grants in California.

APPEAL from the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

*Mr. Walter Van Dyke* for the appellant.

*Mr. Delos Lake, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

In this case a bill in chancery is brought in the Circuit Court of the United States for the District of California, to use the language of the bill itself, " by Walter Van Dyke, United States attorney for that district, on behalf of the United States," against Throckmorton, Howard, Goold, and Haggin.

The object of the bill is to have a decree of the court, setting aside and declaring to be null and void a confirmation of the claim of W. A. Richardson under a Mexican grant, to certain lands, made by the board of commissioners of private land-claims in California on the twenty-seventh day of December, 1853; and the decree of the District Court of the United States, made Feb. 11, 1856, affirming the decree of the commissioners, and again confirming Richardson's claim.   The general ground on which this relief is asked is that both these decrees were obtained by fraud.

The specific act of fraud which is mainly relied on to support the bill is, that after Richardson had filed his petition before the board of commissioners, with a statement of his claim and the documentary evidence of its validity, March 16, 1852, he became satisfied that he had no sufficient evidence of an actual grant or concession to sustain his claim, and with a view to supply this defect, he made a visit to Mexico, and obtained from Micheltorena, former political chief of California, his signature, on or about the first day of July, 1852, to a grant which was falsely and fraudulently antedated, so as to impose on the court the belief that it was made at a time when Micheltorena had power to make such grants in California; and it is alleged that in support of this simulated and false document he also procured and filed therewith the depositions of perjured witnesses.

There is much verbiage, repetition, and argumentative matter in the bill; but no allegation whatever that any of the attorneys, agents, or other officers of the government were false in their duty to it, or that they assisted or connived at the fraud, unless a single allegation on that subject, which will be hereafter considered, sufficiently makes such charge.   For the present, it will be assumed that no such charge is made.

While the bill is elaborate in its statement of matters which

are supposed to impeach the decree, and is correspondingly silent as to any thing tending to its support, there are important facts which, it cannot escape attention, could not be omitted.  Among these is, that, in attempting to negative the idea that juridical possession of the land was ever delivered to Richardson by the Mexican authorities, it is incidentally admitted that at the time the transaction occurred on which his claim is founded, he was in actual possession and residing on part, if not all, of the land in controversy.  So, also, it is tacitly admitted that the archives of the Mexican government, turned over to the office of the United States surveyor-general, and original documents produced by Richardson, showed an espediente which was sufficient to establish the claim, except for the want of the final concession.  It is, therefore, to be taken as true that Richardson, being on the land prior to 1838, made his petition to the governor for a grant of this land, which was appropriately referred for information, and that the proper report was had that there was no objection to the grant. According to Mexican law, but two things remained to perfect the title; namely, a grant or concession by the governor, and the delivery of juridical possession.   The latter has never been held by this court as indispensable to a confirmation of the grant, and least of all when the party was already in possession, which he had held for many years.   It is also important to observe that the original petition was filed before the board, March 16, 1852, and its decree was rendered Dec. 27, 1853 ; that an appeal was taken to the District Court, where the case remained until Feb. 11, 1856, when it was affirmed; that an appeal was again taken to the Supreme Court of the United States, which was dismissed by order of the Attorney-General on the second day of April, 1857.   The case was pending in litigation, therefore, more than five years before the decree became final, and more than four years after the alleged fraudulent grant by Micheltorena was filed in the case. It is also to be observed that the necessity of such a paper to the support of Richardson's claim had been made obvious to the board of commissioners, to the claimant himself, and to the attorneys representing the government, by the report of the surveyor-general, that while every thing else seemed right in

his office, the important final decree of concession was not there.   The attention, therefore, of all the parties and of the court must have been drawn to a close scrutiny of any proceeding to supply this important document.

There was also ample time to make all necessary inquiries and produce the necessary proof, if it existed, of the fraud. The allegation of the bill is that this simulated concession was filed with the board of commissioners in January, 1853, and the decree rendered on December 27, thereafter.   The appeal was pending after this in the District Court over two years; and after the final decree in that court it remained under the consideration of the Attorney-General another year, when he authorized the dismissal of the appeal.   The case, then, unless these officers neglected their duties, underwent the scrutiny of two judicial tribunals and of the Attorney-General of the United States, as well as of his subordinate in the State of California, and was before them for a period of five years of litigation.

The bill in this case is filed May 13, 1876, more than twenty years after the rendition of the decree which it seeks to annul. During that time Richardson, the claimant, and the man who is personally charged with the guilt of the fraud, has died; his heirs, who with himself were claimants in the suit, are not made parties, and the land has passed from his ownership to that of the present defendants by purchase and conveyance.

It is true that the defendants are charged in general terms with being purchasers with notice.

It is true that the United States is not bound by the Statute of Limitations, as an individual would be.   And we have not recited any of the foregoing matters found in the bill as sufficient of itself to prevent relief in a case otherwise properly cognizable in equity.   But we think these are good reasons why a bill which seeks under these circumstances to annul a decree thus surrounded by every presumption which should give it support, shall present on its face a clear and unquestionable ground on which the jurisdiction it invokes can rest.

Let us inquire if this has been done.

There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judg-

ments.  There is also no question that many rights originally
founded in fraud become — by lapse of time, by the diffi-
culty of proving the fraud, and by the protection which the
law throws around rights once established by formal judicial
proceedings in tribunals established by law, according to the
methods of the law — no longer open to inquiry in the usual
and ordinary methods.  Of this class are judgments and de-
crees of a court deciding between parties before the court and
subject to its jurisdiction, in a trial which has presented the
claims of the parties, and where they have received the con-
sideration of the court.

There are no maxims of the law more firmly established, or
of more value in the administration of justice, than the two
which are designed to prevent repeated litigation between the
same parties in regard to the same subject of controversy;
namely, *interest rei publicæ, ut sit finis litium,* and *nemo debet
bis vexari pro una et eadam causa.*

If the court has been mistaken in the law, there is a rem-
edy by writ of error.  If the jury has been mistaken in the
facts, the remedy is by motion for new trial.  If there has
been evidence discovered since the trial, a motion for a new
trial will give appropriate relief.  But all these are parts of
the same proceeding, relief is given in the same suit, and the
party is not vexed by another suit for the same matter.  So in
a suit in chancery, on proper showing a rehearing is granted.
If the injury complained of is an erroneous decision, an appeal
to a higher court gives opportunity to correct the error.  If
new evidence is discovered after the decree has become final, a
bill of review on that ground may be filed within the rules
prescribed by law on that subject.  Here, again, these pro-
ceedings are all part of the same suit, and the rule framed for
the repose of society is not violated.

But there is an admitted exception to this general rule in cases
where, by reason of something done by the successful party to
a suit, there was in fact no adversary trial or decision of the
issue in the case.  Where the unsuccessful party has been pre-
vented from exhibiting fully his case, by fraud or deception
practised on him by his opponent, as by keeping him away
from court, a false promise of a compromise; or where the

defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side, — these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. See Wells, Res Adjudicata, sect. 499; *Pearce* v. *Olney*, 20 Conn. 544; *Wierich* v. *De Zoya*, 7 Ill. 385; *Kent* v. *Ricards*, 3 Md. Ch. 392; *Smith* v. *Lowry*, 1 Johns. (N. Y.) Ch. 320; *De Louis et al.* v. *Meek et al.*, 2 Iowa, 55.

In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practised directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court.

On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. Mr. Wells, in his very useful work on Res Adjudicata, says, sect. 499 : " Fraud vitiates every thing, and a judgment equally with a contract; that is, a judgment obtained directly by fraud, and not merely a judgment founded on a fraudulent instrument; for, in general, the court will not go again into the merits of an action for the purpose of detecting and annulling the fraud." . . . " Likewise, there are few exceptions to the rule that equity will not go behind the judgment to interpose in the cause itself, but only when there was some hindrance besides the negligence of the defendant, in presenting the defence in the legal action. There is an old case in South Carolina to the effect that fraud in obtaining a bill of sale would justify equitable interference as to the judgment obtained thereon. But I judge it stands almost or quite alone, and has no weight as a precedent." . The case he refers to is *Crauford* v. *Crauford*, 4 Desau. (S. C.) 176. See also Bigelow on Fraud, 170–172.

The principle and the distinction here taken was laid down as long ago as the year 1702 by the Lord Keeper in the High Court of Chancery, in the case of *Tovey* v. *Young*, Pr. Ch. 193.

This was a bill in chancery brought by an unsuccessful party to a suit at law, for a new trial, which was at that time a very common mode of obtaining a new trial. One of the grounds of the bill was that complainant had discovered since the trial was had that the principal witness against him was a partner in interest with the other side. The Lord Keeper said : " New matter may in some cases be ground for relief, but it must not be what was tried before ; nor, when it consists in swearing only, will I ever grant a new trial, unless it appears by deeds, or writing, or that a witness on whose testimony the verdict was given was convicted of perjury, or the jury attainted." The case seems to have been well considered, for the decree was a confirmation of one made by the Master of the Rolls.

The case of *Smith* v. *Lowry* (*supra*) was also a bill for a new trial, on the ground that the witness on whose testimony the amount of damages was fixed was suborned by the plaintiff, and that complainant had learned since the trial that a fictitious sale of salt had been made for the purpose of enabling this witness to testify to the market price. Chancellor Kent said that complainant must have known, or he was bound to know, that the price of salt at the place of delivery would be a matter of inquiry at the trial ; and he dismissed the bill for want of equity, citing the case of *Tovey* v. *Young* with approval. And he cites a number of cases to show that chancery will not interfere though new evidence has been discovered since the trial, which, if the party could have introduced it, would have changed the result.

In *Bateman* v. *Willoe* (1 Scho. & Lef. 201), Lord Redesdale said : " I do not know that equity ever does interfere to grant a trial of a matter which has already been discussed in a court of law, a matter capable of being discussed there, and over which the court of law had full jurisdiction." The rule must apply with equal force to a bill to set aside a decree in equity after it has become final, where the object is to retry a matter which was in issue in the first case and was matter of actual contest.

The same doctrine is asserted in *Dixon* v. *Graham*, 16 Iowa, . 310 ; *Cottle* v. *Cole & Cole*, 20 id. 482 ; *Borland* v. *Thornton*, 12 Cal. 440 ; *Riddle et al.* v. *Baker et al.*, 13 id. 295 ; *Railroad Company* v. *Neal*, 1 Wood, 353.

But perhaps the best discussion of the whole subject is to be found in *Greene* v. *Greene* (2 Gray (Mass.), 361), where the opinion was delivered by Chief Justice Shaw. That was a bill filed by a woman against her husband for a divorce. The husband had five years before obtained a decree of divorce against her. In her bill she alleges that the former decree was obtained by fraud, collusion, and false testimony, and she prays that this may be inquired into, and the decree set aside. The court was of opinion that this allegation meant that the husband colluded or combined with other persons than complainant to obtain false testimony, or otherwise to aid him in fraudulently obtaining the decree. The Chief Justice says that the court thinks the point settled against the complainant by authority, not specifically in regard to divorce, but generally as to the conclusiveness of judgments and decrees between the same parties. He then examines the authorities, English and American, and adds : " The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible ; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted." It is otherwise, he says, with a stranger to the judgment. This is said in a case where the bill was brought for the purpose of impeaching the decree directly, and not where it was offered in evidence collaterally. We think these decisions establish the doctrine on which we decide the present case ; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.

That the mischief of retrying every case in which the judg-

ment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.

The case before us comes within this principle. The genuineness and validity of the concession from Micheltorena produced by complainant was the single question pending before the board of commissioners and the District Court for four years. It was the thing, and the only thing, that was controverted, and it was essential to the decree. To overrule the demurrer to this bill would be to retry, twenty years after the decision of these tribunals, the very matter which they tried, on the ground of fraud in the document on which the decree was made. If we can do this now, some other court may be called on twenty years hence to retry the same matter on another allegation of fraudulent combination in this suit to defeat the ends of justice; and so the number of suits would be without limit and the litigation endless about the single question of the validity of this document.

We have alluded to an allegation concerning the agent representing the United States before the board of commissioners. The substance of it is that Howard, one of the present defendants, then the law agent of the government before the board, had, from the papers in some other suit, derived notice of the fraudulent character of the Micheltorena grant, and that he failed and neglected to inform the commissioners of the fact, or otherwise to defend the interest of the United States in the matter. If there had been a further allegation that Howard was then interested in the Richardson claim, or that Richardson had bribed him, or that from any corrupt motive he had betrayed the interest of the government, the case would have come within the rule which authorizes relief. But nothing of the kind is alleged; and the statement is a mere charge of carelessness or negligence on the part of the attorney for the government, which would not have supported a motion for a new trial in a case at law at the same term, much less a suit in chancery to set aside a decree twenty years after it had been rendered.

Nor is there any such clear statement of the notice which Howard had as is necessary to establish his negligence.

In fact, one great if not fatal defect in the bill is the absence of any declaration of the means by which the fraud has been discovered or can be now established.

There is another objection to the bill which, though not going to the merits, is, in our opinion, equally fatal to it in its present shape.

We are of opinion that, unless by virtue of an act of Congress, no one but the Attorney-General, or some one authorized to use his name, can bring a suit to set aside a patent issued by the United States, or a judgment rendered in its courts on which such a patent is founded.

That is the case before us, and we see nothing in the bill to indicate to the court that it ever received the sanction of the Attorney-General, or was brought by his direction. The allegation already cited implies that Mr. Van Dyke, the district attorney, is the complainant; but if, construing it liberally, we hold that the United States is the complainant, the statement is clear that the bill was brought by the district attorney, and not by the Attorney-General. Leaving out of consideration all mere questions of form, there arises no presumption from the act of Congress which gives the Department of Justice a general supervision over the district attorneys, that this suit was brought by his direction; for they, in the strict line of their duty, bring innumerable suits, indictments, and prosecutions, in which the United States is plaintiff, without consulting him. In the class of cases to which this belongs, however, the practice of the English and the American courts has been to require the name of the Attorney-General as indorsing the suit before it will be entertained. The reason of this is obvious; namely, that in so important a matter as impeaching the grants of the government under its seal, its highest law officer should be consulted, and should give the support of his name and authority to the suit. He should, also, have control of it in every stage, so that if at any time during its progress he should become convinced that the proceeding is not well founded, or is oppressive, he may dismiss the bill.

There is appended to this record, though no part of it, a

bond, given by some private persons to the United States, to save it harmless of costs in regard to this suit. If it is intended by this to show that the Attorney-General authorized the suit, it fails to prove it, though the bond recites that that officer had directed the district attorney to bring the suit.

It is not in this way that the then Attorney-General should have placed himself on the record as responsible for such a bill. In confirmation of this view, it does not appear that he or his successors have ever given the slightest attention to the case. In the argument of it before us, no officer of the government appeared. It would be a very dangerous doctrine, one threatening the title to millions of acres of land held by patent from the government, if any man who has a grudge or a claim against his neighbor can, by indemnifying the government for costs, and furnishing the needed stimulus to a district attorney, institute a suit in chancery in the United States to declare the patent void. It is essential, therefore, to such a suit, that without special regard to form, but in some way which the court can recognize, it should appear that the Attorney-General has brought it himself, or given such order for its institution as will make him officially responsible for it, and show his control of the cause.

It is unnecessary at this day to say that, as a substantive matter, standing alone, the Circuit Court has no jurisdiction to interfere with or relieve against a survey which, by the allegation of the bill itself, is pending before the District Court.

For these reasons, we are of opinion that the decree of the Circuit Court sustaining a demurrer to the bill, and dismissing it on the merits, was right.

*Decree affirmed.*