[No. 13997. In Bank.— December. 14, 1891.]

R. T. DUNLAP, Respondent, *v.* JOHN STEERE, Appellant.

Judgment by Default — Quieting Title — Service of Summons by Publication — Fraud — Relief in Equity. — Equity will set aside a judgment obtained by default, upon a service of summons by publication in an action to quiet title, though more than one year has elapsed from the rendition of the judgment, where it appears that the plaintiff in equity had no knowledge of the pendency of the, action or of the rendition of the judgment until more than one year after its date, and that the plaintiff in the original action knew that the allegations of his complaint were false, and made a false affidavit that he had a cause of action, in order to secure a service of the summons by publication.

Id. — GROUNDS FOR EQUITABLE RELIEF — UNCONSCIONABLE ADVANTAGE. —
In all cases where, by accident, or mistake, or fraud, or otherwise, a
party has an unfair advantage in proceedings in a court of law, which
must make that court an instrument of injustice, and it is therefore
against conscience that he should use that advantage, equity will inter-
fere, and restrain him from using the advantage improperly gained.

Id. — FRAUD UPON COURT — FALSE EX PARTE AFFIDAVIT. — An affidavit
for publication of summons is always _ex parte;_ and if such affidavit
falsely states that plaintiff has a cause of action, when he knows the
contrary, it operates as a fraud upon the court; and when the judgment
which rests upon it is itself unconscionable, and was obtained without
the knowledge of the defendant therein, it should be set aside.

Id. — RES ADJUDICATA — FRAUD AS TO MERITS. — The rule that fraud re-
lating to the merits of a controversy is concluded by the judgment, and
is not ground for setting aside the judgment, has no application to a
case where the plaintiff in equity had no knowledge of the pendency of
the action, and could not have protected his rights therein, and his fail-
ure to defend was not a negligent omission on his part.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Wells, Guthrie & Lee,* for Appellant.

*Chapman & Hendrick,* for Respondent. ·

DE HAVEN, J. — The action is one in equity, and is,
in effect, to set aside a former judgment between the
parties, wherein the alleged title of the defendant herein
to the land described in the complaint was quieted as
against all claims of the present plaintiff. The findings
of the court below show that this judgment was obtained
by default, and upon a service of the summons therein
by publication, and that the present plaintiff had no
knowledge of the pendency of that action, or of the
rendition of said judgment, until more than one year
after its date. The court also finds, and the evidence is
sufficient to sustain these findings, that in point of fact
the plaintiff here was the owner of the property involved
in that action, and that not only was the defendant here
without title, but that he knew that the allegations of
the complaint filed by him for the purpose of obtaining
the judgment referred to were wholly false. The ques-

tion therefore presented is, whether a judgment thus obtained is beyond the reach of successful attack in a court of equity. The legal effect of this judgment, if permitted to stand, is to divest plaintiff of all title to his property, in favor of one who has succeeded, by a compliance with the mere forms of law, in obtaining such judgment, and that, too, without the knowledge of plaintiff, and therefore when it was morally impossible for him to defeat it. We think the plaintiff is entitled to the relief which he asks, not only upon authority, but upon the plainest principles of justice. "In general, it may be stated that in all cases where, by accident, or mistake, or fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere, and restrain him from using the advantage which he has thus improperly gained." (Story's Eq. Jur., sec. 885.) In order to justify the application of this rule, it must appear, not only that the judgment against which relief is sought is unjust and unconscionable in itself, but that the person against whom it was rendered was not guilty of negligence in omitting to make his defense in the original action. The facts as found by the court below bring this case fully and clearly within the operation of the rule of equity just cited. In the first place, the defendant practiced a fraud upon the court as well as upon the present plaintiff, in procuring the order for the publication of the summons in the action referred to. Under section 412 of the Code of Civil Procedure, a plaintiff is entitled, under certain circumstances, to procure such an order; but in order to be so entitled, he is required by that section to first present to the court or judge, either in the form of a verified complaint or an affidavit, a statement of facts showing that a cause of action exists in his favor against the defendant. Such an affidavit was presented by the defendant here in the action which resulted in the judgment now sought to be set aside, but

it necessarily results from the findings of the court that not only was the defendant's affidavit false in this respect, but that he knew that it was false. An affidavit of this character is always *ex parte*. The absent defendant is not present to impeach it, and if it is sufficient in form, the court cannot disregard it, but is compelled to accept its statements as true, and make the order which is demanded. Under such circumstances, a plaintiff who seeks to avail himself of the statutory mode for a constructive service of summons must exercise good faith in his representations to the court or judge. He must at least believe that the affidavit which he presents is true. The presentation of a willfully false affidavit for the purpose of obtaining an order for service of the summons for publication is itself an act of fraud; and when the judgment which rests upon it is itself unconscionable, and was obtained without the knowledge of the defendant therein, it should be set aside.

It is claimed, however, that the fraud here complained of is concluded by the judgment itself; that whether the defendant had a good title to the land in controversy was the very matter involved in the former action, and the judgment therein is conclusive upon the plaintiff; and in support of that, the case of *United States* v. *Throckmorton*, 98 U. S. 61, and other similar cases, are cited. But the rule there announced is only applicable where the former judgment was the result of a trial between the parties, or where the one against whom the judgment was rendered had actual notice of the pendency of the action, and neglected to submit his proofs. The case just mentioned was one in which a retrial of an action which had been once fully tried was asked, and can have no kind of bearing here, where the plaintiff never had his day in court, or any opportunity to make his defense to the false and fraudulent claim upon which the judgment against him was based. Not having any knowledge of the pendency of that action, it was an absolute impossibility for him to protect his rights therein, and his failure to defend was not a negligent omission

on his part. It is this difference in the facts which brings the plaintiff here within the protection of the exception to the general rule which was acted upon in *United States* v. *Throckmorton,* 98 U. S. 61, and the existence of which exception was not only admitted in the opinion of the court in that case, but was afterwards applied in *United States* v. *Minor,* 114 U. S. 233. In the case of *Adams* v. *Secor,* 6 Kan. 542, it was held by the supreme court of that state that a judgment based upon a false and fraudulent claim should be set aside, where the defendant therein had only been served by publication, and did not have actual notice of the pendency of the action. In *Tomkins* v. *Tomkins,* 11 N. J. Eq. 512, the court, while refusing relief upon the facts before it, recognized the justice of relieving a defendant from an unjust judgment obtained without his knowledge. It is there said: "The usual ground upon which a court of equity refuses to interfere with a judgment is because the defendant should have protected himself in the court where the judgment was obtained. In a case like the present, of foreign attachment, where the proceeding is *in rem,* and the judgment is obtained without the knowledge of the defendant, and the proceedings are all necessarily *ex parte,* it would be hard indeed if this court could not interpose to protect a party against the fraud of the plaintiff. The propriety of this court's interfering in such cases is too obvious to require its vindication." In the case of *Irvine* v. *Leyh,* 102 Mo. 200, the supreme court of Missouri state what we deem the true rule to be applied here. After referring to the case of *United States* v. *Throckmorton,* 98 U. S. 61, and other cases following it, the court say: "The principle thus so strongly stated in the cases cited proceeds upon the ground that the party had an opportunity to appear and interpose the defense in the suit in which the judgment complained of was rendered. The cases before cited are those in which the defendant in the first suit appeared, or had actual notice of the suit, and might have interposed the fraud as a defense. In all such

cases the issues made by the pleading, or which might have been made, are justly regarded as settled and merged in the judgment, leaving collateral matters only open to investigation. But, in our opinion, the rule of the cases cited cannot be applied in all of its strictness to a case where the defendant has been brought in by newspaper notice only, and had no actual notice of the suit, and, as a consequence, had no real opportunity to defend. The rule must be applied to those cases where the reason upon which it is founded admits of its application. But to entitle the plaintiffs to the relief which they asked and procured in the case, it is not enough for them to simply show that Leyh had no valid cause of action against them. They must at least show that the claim was founded upon or conceived in fraud, and that the machinery of the law was resorted to for the purpose of enforcing what was known to be a fraudulent demand." The facts found by the court here fully satisfy the rule as held in the case just cited. That rule, it seems to us, gives to one obtaining a judgment against another without a trial, and without his knowledge, sufficient protection. Its application to the facts of this case must result in an affirmance of the order appealed from.

Appeal from judgment dismissed; order denying motion for new trial affirmed.

SHARPSTEIN, J., and HARRISON, J., concurred.

BEATTY, C. J., concurring. — I concur. It appears that Dunlap was, without any fault of his own, deprived of the opportunity of interposing a perfect defense to the action of *Steere* v. *Dunlap*, and it is alleged in the complaint herein, and found by the court, not only that the allegations of the complaint in the former action were untrue, but that Steere at the time knew they were false. The evidence is sufficient to sustain this finding, at least so far as the complaint in the former action counted upon a title by prescription; but there is nothing to show that Steere in fact knew that his tax title

was void, though such knowledge is by the law imputed to him. The case, then, presents these features: Steere sues Dunlap upon a claim which he knows to be false. He obtains an order for publication of summons, based upon the two grounds that Dunlap has departed from the state, and cannot, after due diligence, be found within the state. His affidavit is in itself sufficient to justify a finding that these grounds exist; and a judgment entered upon Dunlap's default, after publication of summons, is not void, and cannot be set aside upon motion, unless the motion is made within a year. (Code Civ. Proc., sec. 473.) Can it, then, be annulled by suit in equity after the year? I think it clear, on principle, that in a case where no rights of innocent third parties are involved, a judgment so obtained ought to be set aside, upon the ground that it was fraudulently obtained; the fraud consisting in taking a default judgment upon a claim made in bad faith against a defendant, who, without any fault on his part, is prevented from interposing a perfect defense. The findings of the superior court, therefore, which are supported by the evidence, are themselves sufficient to support the judgment; and the order denying defendant's motion for a new trial should be affirmed.

McFARLAND, J., dissenting. — I dissent, and concur in the opinion of Commissioner Vanclief, prepared in Department, a copy of which is hereto attached; and I desire to say further, that, in my opinion, there is no sufficient evidence to support the latter part of the following finding of the court: "And the said John Steere was not then the owner of the said property, nor any part thereof, and had no right, title, or interest of any sort therein, all of which he well knew." In Steere's complaint in the original action, he first averred ownership and possession of the land, and afterwards also averred adverse possession in himself and grantors for five years; and it fully appears that he relied upon paper title founded on a certain tax deed, as well as upon adverse possession, — if

indeed he introduced any evidence at all about adverse possession, which does not appear. In the present action, Dunlap avers that the only claim which Steere had was a certain tax deed, which he sets out in full in his com-plaint, together with the certificate of purchase which preceded it, in order to show that it did not, in law, con-vey title; the contention being that the deed, although good on its face, did not accomplish its purpose, because it did not follow the recitals of the certificate, and the recitals of the certificate showed an irregularity in the assessment. Assuming this to be the law, the attack upon Steere's deed is, at least, extremely technical; and it does not support the finding of fraudulent personal in-tent against him, viz., that " he well knew " that " he had no right, title, or interest of any sort " in the property described in his deed. The only other evidence tending to support the said finding relates to Steere's possession; and assuming that it shows a want of adverse posses-sion, under the views above expressed, there was no war-rant for the general finding that he well knew that he had no right or interest of any sort. There are other reasons why, in my opinion, the former judgment should not be disturbed, but I consider further discussion un-necessary.

The following is the opinion of Vanclief, C., in De-partment: —

"Action to quiet plaintiff's title to two lots in the town of Santa Monica, in the county of Los Angeles, and for this purpose to annul a former judgment of the same court between the same parties as to the same lots, and to enjoin its execution. Judgment passed for the plain-tiff, and the defendant appeals from the judgment, and from an order denying his motion for a new trial. The judgment was rendered September 24, 1888, and the ap-peal from it was taken July 18, 1890, and should there-fore be dismissed; but the appeal from the order was taken within sixty days from the time the order was made.

"The principal question, and the only one that need be considered, is, Was the former judgment conclusive of the rights of the parties to the land in question? This question arises on the appeal from the order, by defendant's exception to the sufficiency of the evidence. The former action was by the present defendant, Steere, against the plaintiff here, to quiet the alleged title of Steere to the lots in question; and the judgment therein was rendered against the defendant (plaintiff here) by default. The service of summons in that action having been made by publication, it is contended that the affidavit upon which the order of publication was made is defective and untrue in material particulars. The following is a copy of that affidavit: —

"'John Steere, being duly sworn, says that he is the plaintiff in the above-entitled action; that the complaint in said action was filed with the clerk of said court on the 25th day of June, 1884, and summons thereupon issued; that said action is brought to obtain a decree of said court quieting the plaintiff's title to that certain tract or parcel of land lying and being situate in the county of Los Angeles, state of California, and particularly described as lots X and W, in block 193, in the town of Santa Monica, as designated on the map of said town; that in said decree it be declared and adjudged that plaintiff is the owner of said premises, and that the defendants, or either of them, have no estate or interest whatever in or to said land and premises; and affiant further says that said plaintiff is the owner in fee of said premises, and said plaintiff and his grantors have been, for more than five years continuously, in the open, notorious, and adverse possession of said premises, claiming the same adversely to all the world; that the defendants claim some interest in said premises adverse to plaintiff, but the said claims of defendants are without any right whatever; and that the said defendants, or either of them, have no right, title, or interest in said land or premises, or any part thereof. Reference is had to the verified complaint of plaintiff on file herein, in

which the cause of action is fully set forth; that said defendant R. T. Dunlap cannot, after due diligence, be found within this state; that the said R. T. Dunlap has departed from this state, and cannot, after due diligence, be found within this state; and this affiant, in support thereof, states the following facts and circumstances: That the summons which was issued in said action was given to the sheriff of Los Angeles County, and said sheriff made diligent search for said defendant R. T. Dunlap, but could not find him, and said sheriff informed affiant that he did not know where said defendant Dunlap was or where he could be found; that affiant has searched for said defendant R. T. Dunlap, and has inquired of a great many of the citizens and residents of Los Angeles County — among them, M. B. Boyce, William Flores, and John Milner — as to the whereabouts of said defendant R. T. Dunlap, and as to his residence; that each of said persons so inquired of informed affiant that they did not know where said defendant Dunlap was, where he resided, or where he could be found; that said M. B. Boyce claims to be the agent of said R. T. Dunlap, but even he informed this affiant that he did not know where said Dunlap was, or where he could be found; that affiant does not know where said R. T. Dunlap resides, where he is, or where he can be found; that affiant has made diligent inquiry to find said defendant, but cannot, after due diligence, find him within this state; that this affiant therefore says that personal service of said summons cannot be made on said defendant R. T. Dunlap, and prays for an order that service of the same may be made by publication.        JOHN STEERE.'

" The order of publication was in the usual form, requiring the summons to be published two months in a proper newspaper, and it was published as required by the order. More than one year after the rendition of the former judgment, the defendant (plaintiff in this action) moved the court in which it was rendered to set it aside, and for leave to answer, upon his affidavit, stating substantially the same facts alleged in his complaint herein.

This motion was denied, and no exception was taken to the order denying the same, and no appeal has been taken therefrom. As one of the express objects of this action is to set aside the former judgment, and to enjoin its execution, that judgment is fully set out in the complaint, and the judgment roll in that action was introduced as evidence in chief by the plaintiff. The defendant also pleaded the former judgment as a bar to this action.

" 1. It appears that the former action was commenced by H. K. S. O'Melveny, as attorney for plaintiff, and that his name was indorsed on the summons as attorney for plaintiff; that before the order of publication was made, an order substituting Messrs. Wells, Van Dyke & Lee as attorneys for plaintiff was made; but that the summons was published as originally issued, with the name of O'Melveny indorsed thereon as attorney for plaintiff. It is contended by respondent that the name of Wells, Van Dyke & Lee should have been indorsed on the summons as published, and that the omission so to indorse them is a fatal defect in the publication. The provision of the code requiring the name of plaintiff's attorney to be indorsed on the summons relates to the summons as issued by the clerk, and was complied with in this case. As there is no requirement that the names of attorneys afterwards substituted for or added to the original attorney for plaintiff shall be indorsed on the summons, I think the summons was properly published in the form in which it was issued.

" 2. No other defect in the form or substance of the affidavit is pointed out by counsel, and none is perceived; but it is alleged that the statements therein, that Dunlap had departed from this state, and that, after due diligence, he could not be found within this state, are not true; and the court so found. The only evidence to sustain this finding is the testimony of the plaintiff, Dunlap, to the effect that, although he departed from this state in 1879, he returned to Inyo County, in this state, in the spring of 1881, where he openly and publicly re-

sided and worked as a miner and farmer from that time until 1887; that he never, during that time, saw the newspaper in which the summons was published, nor had any actual notice of the publication of summons, or of the pendency of the former suit; that he left Mr. Boyce in charge of the lots when he departed from the state, but did not inform Boyce that he intended to leave, or where he was going; and that he never communicated with Boyce or any other person in Los Angeles County during his absence, until 1887.   This testimony has no tendency to prove that the affidavit was not made in good faith. The affidavit is sufficient to show that, ' after due diligence,' Dunlap could not be found 'within the state.' This, with the other facts therein stated, justified the order of publication.  (Code Civ. Proc., sec. 412; *Forbes* v. *Hyde*, 31 Cal. 348; *Ligare* v. *California Southern R. R. Co.*, 76 Cal. 610.)   The publication of the summons according to the order was service of it upon the defendant, having the same effect as if served by either of the other modes prescribed by the Code (Code Civ. Proc., secs. 413, 416), except that in case of service by publication alone, the defendant, on a proper showing, may be allowed to answer to the merits of the action at any time within one year after the rendition of the judgment. (Code Civ. Proc., sec. 473.)   After the expiration of one year, the judgment by default, upon service of summons by publication, is just as conclusive as if it had been rendered upon personal service, and will not be opened or set aside by a court of equity, except on the ground of fraud, accident, mistake, or surprise, by which, without any fault or negligence on his part, the defendant was prevented from making a meritorious defense.  (*United States* v. *Throckmorton*, 98 U. S. 68; *Zellerbach* v. *Allenberg*, 67 Cal. 298; *Amador C. & M. Co.* v. *Mitchell*, 59 Cal. 179; *Mastick* v. *Thorp*, 29 Cal. 448; *Boston* v. *Haynes*, 33 Cal. 32; *Phelps* v. *Peabody*, 7 Cal. 52.)   Upon a sufficient affidavit, the court found and determined that the defendant in the former action could not, 'after due diligence, be found within the state,' and so recited in the

order of publication. This judicial determination of the fact is conclusive as against the mere testimony of the plaintiff that he was in Inyo County, in this state, at the time the former action was commenced, and when the order of publication was made, and that, in his opinion, personal service might have been made upon him there by the exercise of due diligence. There is no pretense that the plaintiff in the former action knew or had any reason to believe that the defendant was in Inyo County. Nor is there any evidence tending to prove that the acts of diligence stated in the affidavit were not performed, or to show fraud or bad faith on the part of the plaintiff in that action in procuring the order of publication. Nor is there any averment or evidence of any mistake, accident, or surprise, in the legal sense of those terms, by which the plaintiff herein, without fault or negligence on his part, was prevented from making his defense in the former action. That service of summons by publication is proper in an action to quiet title to land in this state was expressly decided in the late case of *Perkins* v. *Wakeham,* 86 Cal. 580.

" It follows that, for aught that appears by the record in this case, the former judgment is conclusive evidence that the appellant is the owner of the lots in question, and that the findings of the trial court to the contrary are not justified by the evidence. I think the appeal from the judgment should be dismissed, that the order denying a new trial should be reversed, and a new trial granted."

PATERSON, J., dissenting. — I dissent, on the ground that the evidence does not justify the decision. I recognize the correctness of the rule stated in the cases cited by Mr. Justice De Haven; but to make it applicable, it should clearly appear from the evidence that the party charged with fraud deliberately commenced and prosecuted his action with the intent to defraud his adversary, and knowing that his claim was baseless in law and in fact. In this case the evidence, in my opinion, fails to

show that the defendant, in prosecuting his action against Dunlap, acted in bad faith. His complaint was filed on June 25, 1884. Summons was issued on the same day, but the affidavit for publication was not made until February 7, 1885. This does not show great activity on the part of Steere in attempting to consummate the fraud with which he is charged. No wrong can be predicated upon the fact that the summons was published in the Weekly Censor. The judge decided the question as to the paper in which the summons should be published. The default of the defendant in that action was entered on May 18, 1885. This action was not commenced until November 30, 1887. Mr. Dunlap testified that he left Boyce in charge of the property at Santa Monica, as his agent, in January, 1878. There was a house on the property at the time, and the land was fenced. Plaintiff testified, also, that he received rent for the property only one year, and the reason why he made no inquiries about it was because he had lost the address of Boyce. This is a singular excuse, and shows great negligence. The town of Santa Monica is so small that probably every man in the town knows every other inhabitant thereof; and it would have been easy to discover the whereabouts of his agent, if he had made any inquiry. Boyce testified that the plaintiff left the property in his charge to sell, and meantime to collect the rents; that the last time he saw Dunlap was in January, 1878; that Steere took actual possession of the property, and made improvements on the house, in the fall of 1885. He testified further that Steere called upon him several times, and inquired very earnestly where Dunlap could be found; that he came to see about getting service on him; that Steere was inclined to push matters, and that he, Boyce, was a little indifferent about the matter; that Steere claimed to have a tax deed for the property, and asked him, Boyce, how soon he could hear from Dunlap, and that he told him he thought he would hear from him in three, four, or five weeks, probably. Milner, under whom Steere claims, paid the taxes on the property for

the years 1879–80, 1880–81, 1882–83, 1883–84; and when
the defendant purchased from him, he repaid the amount
of taxes which Milner had thus paid. Milner's certifi-
cate of sale from the tax collector was dated March 4,
1879. The evidence is entirely consistent with the
theory of the good faith of Steere in the prosecution of
his suit. The circumstances show that he believed him-
self to be the owner of the land. He paid a valuable con-
sideration for the tax title, and he and his grantor paid
the taxes assessed upon the land every year, except two,
after 1878. If he had desired to perpetrate a fraud upon
Dunlap, it is not at all probable that he would have im-
portuned Boyce so often to discover the very fact which
would have effectually prevented him from making the
affidavit, and procuring the order for publication. It is
said that it must be presumed he knew his tax deed was
invalid. I do not think any such presumption should
be indulged; but if it can, it certainly is not sufficient
to convict him of a willful and deliberate attempt to de-
fraud, when it is admitted or appears that he paid a val-
uable consideration for the tax title, and endeavored in
good faith to give the defendant in the action personal
notice of the claim set up. The worst construction that
can be fairly put upon the conduct of Steere is, that he
had a doubt as to the validity of his title, and sought the
aid of the court to settle the matter in his favor. This
he had the right to do. He knew that plaintiff was
claiming through his agent the right of possession, and
to collect the rents. There is no evidence that any one
ever advised Steere that his tax deed was invalid. Prob-
ably not one man in a thousand, outside of the profes-
sion, would have known that the deed was void. The
question of ownership, and the question whether one
has held adverse possession, are questions so mixed with
law that a statement in relation thereto by a layman
should not be regarded with great strictness.

GAROUTTE, J., concurred.

Rehearing denied.