[Civ. No. 1221. Fourth Appellate District.—June 23, 1933.]

SATENIG KASPARIAN, Plaintiff; and NEVART KAS-
PARIAN et al., Minors, etc., Interveners and Respond-
ents, v. GARABED M. KASPARIAN et al., Appellants.

Farnsworth, Burke & Maddox, K. Ohanian, James K. Abercrombie and Karl A. Machetanz for Appellants.

Harris & Hayhurst, K. Kuyumjian and Rue C. Gibson for Respondents.

MARKS, J.—M. G. Kasparian was the husband of Satenig Kasparian and the father of Nevart Kasparian and Grace Kasparian, the interveners, and a third child, Deran, who does not appear in this action, all minors. He was the son of Garabed M. Kasparian and the brother of Lilly Andrews, the appellants. He died testate on November 1, 1930, naming Lilly Andrews as the executrix of his will, which was admitted to probate on December 8, 1930. By this will he recognized that plaintiff would succeed to one-half of the community property and bequeathed her one dollar. He bequeathed all the remaining community property to his three children and his separate property to his sister, Lilly Andrews.

After the will was admitted to probate in Tulare County two inventories were returned showing one parcel of real property of the value of $2,000 in the city of Fresno, and personal property of the value of $1108.47. During the course of the administration of the estate the plaintiff commenced two actions in the Superior Court of Tulare County, one against the Missouri State Life Insurance Company, Lilly Andrews as executrix, and Garabed M. Kasparian, in which she sought to recover an undivided one-half interest in all moneys due under a life insurance policy upon the life of M. G. Kasparian, upon the theory that the premiums on the policy had been paid out of the community funds of herself and her deceased husband. The second action was against Garabed M. Kasparian and Lilly Andrews as executrix. Four causes of action were stated. In the first it was alleged that a parcel of real property in Tulare County was the community property of herself and her deceased husband with the record title standing in the name of the latter; that her husband had represented to her that it was necessary to secure a loan, using this property as security in a mortgage or deed of trust; that he presented an instrument to her which he represented was either a mortgage or deed of trust and which she signed without reading, relying solely upon his representations; that in fact it was a grant deed purporting to convey the property to Garabed M. Kasparian; that she did not discover the fraud until on or after November 20, 1930; that this conveyance was without consideration. The other causes of action alleged that her deceased husband had purchased three parcels of real property with community funds and that each parcel had been deeded to Garabed M. Kasparian without her knowledge and without his paying any consideration for any of them. The plaintiff sought a decree of court establishing the fact that the four parcels of land were community property; that the first deed be set aside and that Garabed M. Kasparian be required to reconvey the property described in the first cause of action to the executrix of her husband's estate and to the plaintiff; that the other parcels of real estate be adjudged to be community property of deceased and the plaintiff and that Garabed M. Kasparian be required to reconvey a one-half interest therein to the estate and the remaining one-half to the plaintiff; that Garabed M.

Kasparian be required to account for all the rents, issues and profits he had received from the four parcels of real property.

The defendants appeared separately in the action. Garabed M. Kasparian denied all of the material allegations of the complaint and alleged that he had actually furnished all of the money to purchase all of the real property in question and that it was at all times his separate estate. Lilly Andrews as executrix alleged that she had no knowledge or belief as to the material allegations of the complaint concerning the title to the various parcels of real estate and denied all of such allegations. She alleged upon information and belief that the real estate had all been purchased with money which belonged to Garabed M. Kasparian and that the deceased and plaintiff had never had any right, title or interest in any of it.

The two actions were commenced on January 2, 1931, and negotiations followed for their settlement which resulted in the filing of two written stipulations signed by the attorneys for the respective parties. The stipulation filed in the case against the insurance company bears the numbers of both actions and reads as follows: ''It is hereby stipulated by and between the attorneys for the respective parties hereto, that the first entitled action (the insurance case) shall be and is hereby settled by the entry of a judgment and decree herein which shall provide as follows: First: Plaintiff shall have and recover judgment for nineteen thousand dollars ($19,000.00) payable on the entry of the judgment. Second: In all other respects judgment in this action, and in the action to recover a certain interest in certain real estate, and which action is numbered 22090 on the records of the above named superior court shall be rendered in favor of the defendants and each of them. Third: Each party to the above entitled litigation and the action concerning the real estate shall bear his or her own costs. Fourth: The respective parties to said actions agree to sign, execute and deliver any and all papers, documents, releases, deeds, and conveyances and other instruments necessary to effectuate the purposes of this agreement in all respects. Dated: March 9th, 1931.''

The following stipulation was filed in the other action: ''It is hereby stipulated and agreed by and between the

plaintiff above named and the defendants above named, that judgment in the above entitled action may be entered in favor of the said defendants, and against said plaintiff. Each party to pay his own costs. Dated: March 13, 1931.''

Lilly Andrews filed her petition for authority to compromise the two actions brought by Satenig Kasparian against Garabed M. Kasparian and herself as executrix, praying for leave to compromise the cases in accordance with the stipulations already referred to. This petition was heard the same day in the probate court and an order was signed authorizing the settlement.

 Counsel for Lilly Andrews calls our attention to the fact that it is stated in the petition to compromise that ''Satenig Kasparian, the widow of said M. G. Kasparian, deceased, received for herself and as representative for the estate of M. G. Kasparian, deceased, the sum of nineteen thousand ($19,000.00) dollars in cash as a compromise''. He also refers to an obscure sentence in the long order authorizing the compromise ''wherein the said plaintiff, Satenig Kasparian, received the sum of nineteen thousand ($19,000.00) dollars cash in settlement of any and all claims which she might have, or the estate of M. G. Kasparian, deceased, might have, against any of the property of G. M. Kasparian, also known as Garabed M. Kasparian, be and the same is hereby approved''. He now urges that the payment of $19,000 to Satenig Kasparian was in full settlement of not only her claim against Garabed M. Kasparian but also in full settlement of any claim of the estate in and to the property involved in the action. If the clause just quoted was ever particularly called to the attention of the probate judge we are of the opinion that in so far as it attempted to authorize a release of any claim which the estate had against Garabed M. Kasparian was beyond the power of the probate court to make in such a proceeding. It should be observed that the money was paid in its entirety to Satenig Kasparian. No part of it was paid to the estate. We know of no rule of law in California permitting a probate court to authorize an executrix to divest the estate of any interest in real property in any such proceeding and without any consideration therefor flowing to the estate. The last paragraph of the order authorizing the compromise rather conclusively rebuts the contention of the

executrix. This paragraph is as follows: "It is further ordered and decreed that the act of said Lilly Andrews as executrix of the last will and testament of M. G. Kasparian deceased, in entering into and agreeing to said compromise and settlement of both of said actions Nos. 22089 and 22090 respectively be, and the same is hereby approved and confirmed, and that all of the acts and proceedings of said executrix as set forth in her said petition are hereby approved and confirmed; and said executrix and her said attorneys are hereby authorized to consent in accordance with the said stipulations in said actions that said judgment be made and entered in said action No. 22090 in accordance with the stipulation therein." This clearly shows that the probate judge intended to authorize the compromise set forth in the stipulations and no other. This stipulation provided that judgment should be entered against the plaintiff and in favor of the defendants. It did not purport to attempt to authorize any settlement of any controversy between Garabed M. Kasparian and the estate of M. G. Kasparian. We are of the opinion that the order authorized a compromise of the claim of Satenig Kasparian only.

On May 18, 1931, a judgment was entered in the suit brought by Satenig Kasparian which affected the title to the real property in question. This judgment recited that the plaintiff was neither present nor represented by counsel. It set forth the second stipulation which we have quoted and based the judgment upon its terms. The judgment, however, went far beyond the language of this stipulation and decreed that the plaintiff had no interest in the property; that the property had not been purchased with any of the community funds of M. G. Kasparian, deceased, and plaintiff, but was purchased with the separate funds of Garabed M. Kasparian, who owned it free of any claim of the plaintiff and the estate upon it. It effectually established title in Garabed M. Kasparian and divested the estate of any interest in the property.

On November 17, 1931, the interveners by their guardian *ad litem* served and filed in the respondent court a notice of motion to set aside and vacate this judgment upon the following grounds: "(1) That said judgment was taken against movants through their inadvertence, surprise and

excusable neglect. (2) That said judgment was obtained through the fraud and collusion of said defendant Lilly Andrews, executrix of the last will of M. G. Kasparian, deceased, and G. M. Kasparian. (3) That said G. M. Kasparian and Lilly Andrews, as executrix of the last will and testament of M. G. Kasparian, deceased, conspired and colluded together for the purpose of having said judgment entered and for the purpose of defrauding and depriving these movants of their interests in the real property described in said judgment. (4) That said judgment was and is void on the ground that the same was entered and based upon a stipulation incorporated in said judgment and that the said judgment so far as it affects the movants and their interests in the real property described in said judgment is not in accordance with, but goes beyond the terms of said stipulation. (5) That said Lilly Andrews, as executrix of the last will and testament of M. G. Kasparian, deceased, never obtained any authority from the probate court in the matter of the estate of M. G. Kasparian, deceased, to enter into said or any stipulation upon which said judgment was based. (6) That these movants at the time of the commencement of said action were, and ever since have been, minors; and said minors have not nor has either of them during any of said time had any guardian legally appointed by deed, will or otherwise; and said minors were not nor were either of them during any of said time represented in said action by any guardian *ad litem.* (7) That neither of said movants, to-wit, said minors, were ever served with summons or appeared in said action; that they were not nor were either of them present when said stipulation was signed or when said judgment was entered, and neither of them at any time had any knowledge of the making of said or any stipulation and/or the making of said or any judgment based thereon. (8) That the said Satenig Kasparian, the plaintiff in said action, was ignorant of the fact that said stipulation had been signed or made by her attorneys in said action and that said attorneys had never received any authority from said Satenig Kasparian or from any one else to make or enter into said stipulation or to allow or to permit or consent to the entry of said judgment in accordance with said stipulation or in accordance with the terms of said judgment as entered. (9) That

said judgment is void in that it purports to determine and adjudicate that the estate of M. G. Kasparian, deceased, and those interested therein, including Lilly Andrews, as executrix of said estate and these movants, have no right, title or interest in and to the real property described in said judgment, and that portion of said judgment is not in accordance with said stipulation and is not within or supported by any of the issues tendered by any of the pleadings in said action.''

This motion to vacate the judgment was made on December 7, 1931, and was granted on February 4, 1932, in so far as the judgment related to the executrix and to the minors. Attached to the notice of motion is a copy of a deed from Satenig Kasparian to Garabed M. Kasparian and Vartoohi Kasparian, his wife, quitclaiming all the interest of the grantor in the insurance policy and the real property; also the supporting affidavit of Satenig Kasparian and a complaint in intervention by the interveners in this action, by Satenig Kasparian their guardian *ad litem*. In the order of February 4, 1932, ''it was further ordered that the motion of said minors to intervene in said action be and the same is hereby granted''.

While appellants have filed separate briefs they urge the same grounds for a reversal of the order. First, ''that the action of the trial court was not properly invoked. In other words, respondents should have attacked this judgment by an independent action in equity and not by mere motion, and the trial court had no jurisdiction to hear or decide such motion. Second, that even admitting the procedure followed to have been proper, said order was without any support or justification in the evidence.'' We will consider these contentions in the order stated.

Appellants urge that the fraud, if any, was first intrinsic and, second, that as the motion was made more than six months after the entry of the judgment sought to be set aside, the trial judge had no authority to vacate it under the provisions of section 473 of the Code of Civil Procedure.

Extrinsic fraud has been defined in the case of *McGuinness* v. *Superior Court*, 196 Cal. 222 [237 Pac. 42, 45, 40 A. L. R. 1110], as follows: ''In each of the three former cases the fraud which was held to be or defined as intrinsic

fraud was such as occurred in the course of an adversary proceeding; such as the production of perjured testimony or forged documents during a trial wherein the adversary party had the opportunity to make the truth appear. In the case of *United States* v. *Throckmorton* [98 U. S. 61, 25 L. Ed. 93], *supra,* the Supreme Court of the United States after instancing situations in which the fraud practiced upon the adversary party or the court would be intrinsic fraud points out the line of demarcation between these instances and those wherein by reason of something done by the successful party to a suit there was in fact no adversary trial or decision of the issue in the case; as 'where the unsuccessful party has been prevented from fully exhibiting his case by fraud or deception practiced upon him by his opponent, as by keeping him away from court by a false promise of a compromise; or where the defendant never had knowledge of the suit. . . . these and similar cases which show that there never has been a real contest in the trial or hearing of the case'; such are, in the view of that tribunal, instances of extrinsic fraud. In the recent case of *Simonton* v. *Los Angeles Trust & Savings Bank,* 192 Cal. 651 [221 Pac. 368], it was held by this court that the fraudulent concealment or omission through mistake of an executrix to account for personal property belonging to the estate of the decedent with the result that such property was appropriated by such executrix for her own personal use and benefit constituted extrinsic fraud and this court in that case cited numerous other cases in this and other courts supporting the principle illustrated in the Throckmorton case. It seems to us that the facts of this case bring it by clear analogy within the doctrines thus laid down defining cases of extrinsic fraud. In the case in hand there was no adversary proceeding attending or embracing the action of the court in the divorce action at the time of the application for and entry of the final decree.'' We think that under this definition the fraud here disclosed must be held to be extrinsic. It did not occur in the course of an adversary proceeding at which the plaintiff was either present or represented. At the time the judgment in question was entered neither the plaintiff nor her attorneys were present and the minors were not present nor represented either by a general guardian or guardian *ad litem.* In fact there is no showing that they had either at

that time and in the absence of such showing we are authorized to assume that they had neither. The judgment which purported to have been entered upon and in accordance with the terms of a written stipulation went far beyond the terms authorized by it. Under these circumstances the definition which we have quoted applies to the facts before us. The fraud was extrinsic and being such the trial court had authority to set aside and vacate the judgment within a reasonable time regardless of the limitation contained in section 473 of the Code of Civil Procedure. (*McGuinness* v. *Superior Court, supra.*)

The case of *Sharp* v. *Eagle Lake Lumber Co.*, 60 Cal. App. 386 [212 Pac. 933], also supports this position. It holds that a motion to vacate and set aside a judgment is a direct and not a collateral attack upon it. It is also authority for the conclusion that where the summons in an action has been served upon the vice-president of a defunct corporation and a judgment thereafter entered, a stockholder of the defunct corporation may move to set aside the judgment after the expiration of six months from its rendition even though it should be held that the limitations of section 473 of the Code of Civil Procedure should apply.

If we assume the provisions of section 473 of the Code of Civil Procedure apply here, the case of *In re Mercereau*, 126 Cal. App. 590 [14 Pac. (2d) 1019], is authority for our holding that the motion of the minors to vacate the judgment was made in time, it being made within one year from the entry of the questioned judgment. In the Mercereau case the petitioners sought to have land registered under the Land Title Law adopted by the people on November 3, 1914. William C. LaBerge was named a defendant and was served by mail. The decree was entered April 25, 1929. On April 11, 1930, Ora E. LaBerge, wife of William, moved the court to vacate the decree in so far as it affected her interest in the land. Her motion was granted and this court affirmed the order. A hearing was denied in the Supreme Court. The record indicated that Mrs. LaBerge claimed an interest in the property; that she was not named as a defendant and was not notified and did not know of the pendency of the proceeding. This case is authority for the rule that when a person claims an interest in real property, is not named as a defendant and is not served

with process and does not know of the pendency of the action, such person may move, within one year under the provision of section 473 of the Code of Civil Procedure, to vacate a judgment which purports to defeat the claim of interest in such property.

The foregoing case is authority for our holding that as the minors who are intervening here were not parties to the action and were not served with any summons and as the judgment deprived them through the estate of their deceased father of any interest in the real property in question and any right to claim such interest, they could move to set aside the judgment at any time within one year from its rendition, under the limitation contained in section 473 of the Code of Civil Procedure.

Nevart Kasparian and Grace Kasparian, by their guardian *ad litem*, filed an action in the Superior Court of Tulare County against Gabarbed M. Kasparian, Vartoohi Kasparian, his wife, and Lilly Andrews as executrix. The complaint contained allegations similar to those set forth in the complaint of their mother. Summons in this action was served on Garabed M. Kasparian in Fresno County on April 23, 1931, and on Lilly Andrews in the same county on May 5, 1931.

We have studied the record carefully and have concluded that it furnishes ample evidence supporting the order of the trial court vacating and setting aside a portion of the judgment. The affidavit of Satenig Kasparian sets forth all of the facts which we have outlined, together with those set forth in the complaint in intervention which stated facts sufficient to constitute a cause of action. In addition it was made to appear that appellants were both served with the copy of the summons and complaint in the action by the minors to have the property in question declared the community property of their parents, M. G. Kasparian, deceased, and Satenig Kasparian. This fact was not disclosed to the probate court at the time it made the order authorizing the compromise. The evidence offered by interveners supporting the order was contradicted. This created a conflict which was addressed to the trial judge. His decision on conflicting evidence is final in this court.

The order appealed from is affirmed.

Barnard, P. J., and Jennings, J., concurred.