[Civ. No. 14600.   First Dist., Div. Two.   June 25, 1951.]

AMABILE DEI TOS, Respondent, v. JOAQUIN DEI TOS, Appellant.

George P. Larrouy and Jerome F. Macdonald for Appellant.

Bullock, Wagstaffe & Daba for Respondent.

NOURSE, P. J.—On February 13, 1946, plaintiff sued for a divorce, and service of the summons and complaint was made on the defendant on February 15th. Three days later the defendant was charged with an assault to commit murder upon his wife. On February 26 his default in the divorce case was entered and an interlocutory decree was entered and filed on the following day. On March 4, 1947, a final decree was entered in favor of plaintiff. In the meantime proceedings under the criminal charge were taken and on May 16, 1946, the defendant herein was committed to a state insane asylum on a finding that he was insane as of the 18th day of February, 1946. On February 18, 1949, the defendant was released from the asylum and on January 27, 1950, he filed in the superior court his motion to vacate and set aside both the interlocutory and the final decree of divorce.

At the hearing of this motion the testimony of the resident physician of the asylum was taken to the effect that the defendant had been insane at the time of the assault upon his wife on February 18, 1946, and for some unspecified time prior thereto and for approximately three years thereafter.

The appellant appeals from the orders denying his motion to vacate the two decrees. He argues that though his motion was made more than six months after the entry of the order attacked, section 473, Code of Civil Procedure, should not be applied because the acts of the respondent in procuring the interlocutory and the final decree, knowing that he was mentally incompetent, was a fraud upon the court. For this he cites *McGuinness* v. *Superior Court*, 196 Cal. 222 [237 P. 42,

40 A.L.R. 1110]. (See *Raps* v. *Raps*, 20 Cal.2d 382 [125 P.2d 826] and *Britton* v. *Bryson*, 216 Cal. 362 [14 P.2d 502].)

■ Appellant also argues, but not too seriously, that we should consider his motion to set aside the orders as one of a writ of error *coram nobis*. A sufficient answer is that he did not apply for a writ of error *coram nobis* and that since that issue was not presented to the trial court he can not claim error for the first time on appeal.

■ The McGuinness case set the rule in this state that where a divorce has been procured by extrinsic fraud the trial court has "inherent" power, notwithstanding the lapse of time, to purge its records of the fraud by setting aside the former decree. The ruling rested on *United States* v. *Throckmorton*, 98 U.S. 61, 65, 66 [25 L.Ed. 93], where the court, illustrating what may be instances of extrinsic fraud justifying such relief, said: "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing."

■ However, the whole theory of the McGuinness case is that the trial court had the "inherent power and jurisdiction" to purge its own record of the fraud on that court. Here the question whether an extrinsic fraud was committed is not easily answered. It would be more accurate to say that mistake, rather than fraud occurred, when the plaintiff failed to have a guardian appointed to appear and defend the action. The charge against the defendant of a criminal assault upon his wife was pending in the same court. He was represented by the same counsel appearing for him in this proceeding, and was examined and committed by the same trial judge. The facts do not present the usual case of extrinsic fraud where the basis of relief is that the offending party has done some act which deceived the trial court, or which prevented a true adversary hearing.

█ The rule is fairly well settled that such relief may be had in a separate action in equity, but some doubt has been expressed where the relief is sought by motion where a limited time has been fixed by statute. The cases are fully reviewed in *Olivera* v. *Grace,* 19 Cal.2d 570, 573 [122 P.2d 564, 140 A.L.R. 1328], where the court said: "Courts frequently set aside judgments rendered against incompetent defendants where it is probable that injustice has resulted. (34 A.L.R. 221, et seq.; 39 L.R.A. 775; 35 L.R.A. (N.S.) 1090.) In determining the applicability of these cases to the present situation, however, it is necessary to consider the source of the authority under which relief was granted. In many states, including California, the general common law power that courts had to control their own judgments during the term at which they were rendered has been continued in the form of statutory authority. (*Wiggin* v. *Superior Court,* 68 Cal. 398, 400 [9 P. 646]; 31 Am.Jur. 268; 14 Cal.Jur. 1009.) Under such statutes the court which rendered the judgment has power, in its discretion (*O'Brien* v. *Leach,* 139 Cal. 220 [72 P. 1004]; 31 Am.Jur. 267; 14 Cal.Jur. 1072), for a definite period of time and upon specified grounds to open, vacate or modify its own final judgment. (Code Civ. Proc., sec. 473; Code Civ. Proc., sec. 663; 31 Am.Jur. 277.)" And again (pp. 575-6): "One who has been prevented by extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him. (*Caldwell* v. *Taylor,* *supra* [218 Cal. 471 (23 P.2d 758, 88 A.L.R. 1194)]; *Purinton* v. *Dyson,* 8 Cal.2d 322, [65 P.2d 777, 113 A.L.R. 1230]; *Dunlap* v. *Steere,* 92 Cal. 344 [28 P. 563, 27 Am.St.Rep. 143, 16 L.R.A. 361].) Where the court that rendered the judgment possesses a general jurisdiction in law and in equity, the jurisdiction of equity may be invoked by means of a motion addressed to that court. (*McGuinness* v. *Superior Court, supra; Crescent Canal Co.* v. *Montgomery,* 124 Cal. 134, 144 [56 P. 797]; *Estate of Estram,* 16 Cal.2d 563, 571 [107 P.2d 36]; *Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 610, 631 [32 P. 600]; *Cohen* v. *Home Life Ins. Co.,* 273 Mich. 469 [263 N.W. 857]; *Home Life Ins. Co.* v. *Cohen,* 278 Mich. 169 [270 N.W. 256]; *Jarman* v. *Saunders,* 64 N.C. 367; *Demilt* v. *Leonard,* 11 Abb.Prac. (N.Y.) 252." In accord *Key System Transit Lines* v. *Superior Court,* 36 Cal.2d 184 [222 P.2d 867]; *Estate of Costa,* 37 Cal.2d 154 [231 P.2d 17].

The Olivera case cites *Estate of Estrem,* 16 Cal.2d 563, where (p. 571 [107 P.2d 36]) the court said: "In addition, a judgment could be attacked at any time either by motion or in an independent action in equity on the ground that it was secured by extrinsic fraud. (*McGuinness* v. *Superior Court,* 196 Cal. 222 [237 P. 42, 40 A.L.R. 1110]; *McKeever* v. *Superior Court,* 85 Cal.App. 381 [259 P. 373]; *Kasparian* v. *Kasparian,* 132 Cal.App. 773 [23 P.2d 802]; *Tomb* v. *Tomb,* 120 Cal.App. 438 [7 P.2d 1104]; *Kronman* v. *Kronman,* 129 Cal.App. 10 [18 P.2d 712].)"

On these authorities a reversal must follow since it is manifest that the defendant was not given his day in court. Whether this was by fraudulent design or by mere mistake or inadvertence on the part of the plaintiff makes no difference. The principle of law involved is that, through no fault of his, the defendant was not permitted to participate in the proceedings.

Orders reversed.

Goodell, J., and Dooling, J., concurred.