**In re REDWINE.**

No. 2186.

District Court, N. D. Alabama, N. W. D.

Jan. 10, 1944.

W. L. Chenault, of Russellville, Ala., and Charles W. Greer, of Birmingham, Ala., for W. K. Redwine, bankrupt.

W. F. McDonnell, of Sheffield, Ala., for Addie Lee Farish, Superintendent of Banks of State of Alabama, petitioner.

MULLINS, District Judge.

This matter comes before the Court on the review of an order of the Referee denying the petition of Addie Lee Farish, as Superintendent of Banks of the State of Alabama, seeking permission to enforce her judgment lien in the State court. The order of the Referee was entered on June 14, 1943, and reads in part as follows: "And, after full consideration of this case, the Court concludes that the said judgment of the Tennessee Valley Bank, which is sought to be enforced herein against this bankrupt, W. K. Redwine, is invalid and should not be enforced against said bankrupt, and it is herefore hereby ordered, adjudged and decreed that the said judgment be and the same is hereby disallowed, and the said Addie Lee Farish, as Superintendent of Banks for the State Banking Department of the State of Alabama, is hereby enjoined from enforcing or at-

tempting to enforce the said judgment against said Redwine in any court, except that she is allowed to have the foregoing decree reviewed if she shall make application for the review within ten days after receiving notice of the foregoing decree."

The Referee apparently did not attempt to make a complete findings of fact, but in compliance with Section 39, sub. a(8), of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. a(8), has certified to the Court as a part of the record transcripts of the testimony taken before him. The Court has read all of this testimony, including the exhibits, and the pleadings as shown by the record, and has ascertained the following facts to which due consideration has been given in arriving at the conclusions hereinafter made.

### Findings of Fact

I. On August 7, 1928, the bankrupt, W. K. Redwine, borrowed $2900 from the Tennessee Valley Bank, executing his promissory note to secure the loan. Subsequently this note was signed by his brother, T. R. Redwine. Said note appears on page 63 of the record.

On or about November 15, 1929, the town of Town Creek, Alabama, issued approximately $2,900 in warrants payable to the bankrupt, and these warrants were endorsed and delivered to the said Tennessee Valley Bank. The bankrupt denies that he ever had the physical possession of the warrants, but he admits that he endorsed them and the warrants were received by the bank. Nine of these warrants in the sum of $300 each and numbered 2 to 10, inclusive, were introduced in evidence, and appear in the record in this case. Presumably there was warrant number 1 which is not in the file and the amount thereof is not shown. There is some dispute in the evidence as to whether these warrants totaled $2,900 or $3,000. Some time after these warrants were received by the bank, the bank sued the bankrupt and his brother, T. R. Redwine, on said note, in the Circuit Court of Colbert County, Alabama, and took judgment by default on November 8, 1933, in the amount of $3,150. A certificate of this judgment was duly recorded in the Probate Office of Colbert County, Alabama, on August 1, 1934. Thereafter said Tennessee Valley Bank went into liquidation and the assets of the bank, including the judgment referred to, passed to Addie Lee

Farish, as Superintendent of Banks of the State of Alabama (hereinafter referred to as judgment creditor), who is charged with the duty of administering the assets and winding up the affairs of said bank.

II. After the bank had obtained and recorded the judgment heretofore referred to, Leonora Jackson, a sister of the bankrupt, filed suit in the Circuit Court of Colbert County, Alabama, in Equity, against the said W. K. Redwine and two of his brothers, seeking a partition of certain real estate which Leonora Jackson, W. K. Redwine (the bankrupt), and his brothers had inherited from their father, Mark Redwine. On February 1, 1941, and more than a year prior to the filing of the petition in bankruptcy, the judgment creditor intervened in said partition suit in the State court seeking to have her judgment declared a lien against the interest of the bankrupt in said real estate, this being the same property as is described in the bankrupt's schedule B(1). The bankrupt appeared in answer to said intervention, and on or about March 10, 1941, filed an answer or plea setting up that the property was his homestead, and, therefore, not subject to the lien of said judgment.

III. On February 27, 1942, the State court, by proper decree, partitioned said real estate in kind and allotted to W. K. Redwine the following described lands, namely: The West Half (W½) of the Northwest Quarter (NW¼) and the East Half (E½) of the Southwest Quarter (SW¼), of Section 20, Township 5, Range 14 West, in Colbert County, Alabama.

Thereafter, on March 13, 1942, W. K. Redwine filed his voluntary petition in bankruptcy, and on March 14, 1942, he was duly adjudicated a bankrupt.

On April 4, 1942, about three weeks subsequent to bankruptcy, the State court entered a further decree in favor of the judgment creditor fixing the amount of her claim at $4,871.97, denying the bankrupt's claim of homestead exemption and ordering the lands allotted to him sold for the purpose of satisfying the judgment creditor's lien. It does not appear that any suggestion of bankruptcy was made in the State court or that any appearance was made by a receiver or any other officer of the bankruptcy court.

IV. On April 17, 1942, the judgment creditor filed her petition in the bankruptcy court praying for an order authorizing

her (1) to continue her proceeding in the State court for the enforcement of her lien against the real estate that had been allotted to the bankrupt in said partition proceeding, and (2) to proceed in the State court to enforce her judgment lien secured more than four months prior to bankruptcy against certain other lands or interests in lands of the bankrupt that were not involved in said partition suit.

In answer to this petition, the bankrupt admitted that he borrowed $2,900 from the Tennessee Valley Bank, but averred that the $2,900 worth of warrants of the town of Town Creek, Alabama, were endorsed by him and received and accepted by the Tennessee Valley Bank in full settlement of his indebtedness, and the bankrupt further averred "that at the time the suit was filed against him and his brother in the Circuit Court of Colbert County, Alabama, that the said Tennessee Valley Bank had and held said warrants, and notwithstanding the fact that they did have and hold said warrants under specific agreement that said warrants were in full settlement of the note," the bank obtained judgment against him; and the bankrupt further averred that "said note on which said judgment was obtained was fully paid by said warrants before the said suit was filed, and, therefore, the said judgment should be canceled as being void and without consideration." The bankrupt further averred that at the time the judgment was rendered against him he was sick and unable to attend court, and was not able to make his defense to said suit. The judgment creditor filed her motion to strike said answer of the bankrupt upon the grounds that the court was without jurisdiction to grant the relief prayed for and without authority to cancel or vacate her judgment. By amendment to her motion to strike, the judgment creditor averred that the matters and things set up in the bankrupt's answer were res judicata, as said matters or issues were or could have been litigated in the proceeding in which the judgment was obtained.

V. The Referee set the matter down and heard the evidence. The bankrupt and others testified that prior to the rendition of the original judgment in the State court, in 1933, the bankrupt had delivered or caused the Town Creek warrants to be delivered to the bank in full settlement or payment of the note and that the bank accepted said warrants as payment. The judgment creditor introduced testimony of her agent who stated that the bankrupt had on several occasions offered to make a settlement of the judgment, and that the bankrupt on at least one such occasion had stated to him "that when the warrants were surrendered to the bank he (the bankrupt) should have asked the bank to accept them in payment and give the note to him, but that he didn't do it."

The bankrupt, in his petition and under schedule A(2), listed the judgment creditor's judgment and the warrants of Town Creek under the heading "Creditors Holding Securities."

After the bank had obtained its judgment, and probably about 1935 or 1936, Town Creek made an arrangement to pay $25 per month on the town warrants, and a total of approximately $500 was paid and credited against the judgment. Thereafter Town Creek got into financial difficulties and no further payments were made. The evidence taken before the Referee indicates that the warrants are probably worthless.

VI. On June 29, 1942, the bankrupt amended his petition to claim a portion of his lands exempt as a homestead. It does not appear that the Referee has made any ruling on this claim of exemption.

VII. On June 14, 1943, the Referee entered a decree in which he found the warrants were delivered to the bank prior to the time that it sued and obtained judgment against the bankrupt, and he ruled that the note had been paid in full by the delivery of said town warrants. In the alternative, the Referee ruled that if said warrants were not in payment of the said note, the bankrupt would have a right to set the warrants off against said judgment in liquidation of the same, although his decree is indefinite as to how the set-off should be effected, and it is not shown that the warrants have any value. The Referee concluded that the judgment held by the judgment creditor was invalid and should not be enforced, disallowed said judgment, and enjoined the judgment creditor from enforcing or attempting to enforce said judgment in any court. The judgment creditor has not filed a claim, based upon her judgment, in the bankruptcy court, but merely asked for permission to proceed in the State court, as heretofore indicated.

It appears that no trustee has been appointed and that the issue here is between the judgment creditor and the bankrupt.

## Discussion

It appears that the judgment now sought to be enforced by the judgment creditor was rendered by the Circuit Court of Colbert County, Alabama, on November 8, 1933, about nine years prior to the bankruptcy. This judgment was filed for record in the probate office of said county on August 1, 1934, and by virtue of such recordation became a lien "on all property of the defendant, which is subject to levy and sale under execution," and such lien continued for ten years after the date of such judgment. Code of Alabama of 1940, Title 7, sections 584, 585.

It is without dispute that the bankrupt deposited the warrants of the town of Town Creek with the bank prior to the filing of the suit in which said judgment was obtained. It is also without dispute that any alleged agreement to the effect that said warrants were to be accepted by the bank in payment of W. K. Redwine's indebtedness, or in accord and satisfaction thereof, was made long before said judgment was obtained. When the bankrupt was sued in the State court, he had the absolute right to plead payment or accord and satisfaction in that court, and although he failed to set up such defenses, these issues were adjudicated in that proceeding. The applicable rule is thus stated in 30 American Jurisprudence, pp. 923, 924, section 179: "The phase of the doctrine of res judicata precluding subsequent litigation of the same cause of action is much broader in its application than a determination of the questions involved in the prior action; the conclusiveness of the judgment in such case extends not only to matters actually determined, but also to other matters which could properly have been determined in the prior action. This rule applies to every question falling within the purview of the original action, in respect to matters of both claims and defense, which could have been presented by the exercise of due diligence."

The doctrine of res judicata applies in bankruptcy proceedings. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L. Ed. 281; Beebe v. O'Reilly, 7 Cir., 124 F. 2d 750.

"In allowing or disallowing a claim, the bankruptcy court will not permit the relitigation of an issue already adjudicated between the same parties by a court of competent jurisdiction." Collier on Bankruptcy, 14th Ed., Vol. 3, p. 1800, section 63.07.

Of course, in order for the doctrine of res judicata to apply there must be an identity of parties and issues. In this case, we have an identity of parties, in that here the issue is between the bankrupt, who was the original judgment debtor, on the one hand, and the State Superintendent of Banks as liquidating agent, who succeeded to the rights of the Tennessee Valley Bank, the original judgment creditor, on the other hand. There is an identity of issues, because the bankrupt had the right to plead the payment or accord and satisfaction in the proceeding in which the original judgment was rendered. If these defenses had been presented in the State court, they would have been within the issues, and it would have been the duty of that court to have sustained such defenses, provided they were reasonably established.

The bankruptcy court has no right to re-try issues that have already been adjudicated by a court of competent jurisdiction, and it is without authority to set aside State court judgments on grounds which were presented or could have been presented by the exercise of due diligence.

As was said by the court in Beebe v. O'Reilly, supra [124 F.2d 751]: " * * * The State Court had jurisdiction to act upon the plea and did act. This Court is now asked in substance and effect to review the adjudication of the State Court. This it cannot do. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104."

An excellent statement of the principle relied upon is set out in United States v. Throckmorton, 98 U.S. 61, 65, 25 L.Ed. 93, in the following language: "There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely, interest rei publicæ, ut sit finis litium, and nemo debet bis vexari pro una et eadam causa."

If the rule were otherwise than as stated in the cases just referred to, a de-

fendant, in a suit in a state court, could deliberately refuse to set up his defenses and later secure a re-trial by filing a petition in bankruptcy. In an analogous situation where it was sought to revise and re-determine for state tax purposes the property value of a railroad in reorganization, the State having already determined such value through its own taxing officials, the supreme court, in the case of Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 891, 85 L.Ed. 1244, held that the matter could not be re-tried in bankruptcy. In discussing the provision of the Bankruptcy Act there being considered, the court said; "Nothing in this language indicates that taxpayers in bankruptcy or reorganization are intended to have the extraordinary privilege of two separate trials, one state and one federal, on an identical issue of controverted fact—the value of the property taxed." And the court further declared that there was nothing in the history of bankruptcy or reorganization legislation supporting the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies. The same reasoning applies here, and I do not believe that it was ever intended that the bankruptcy court should act as a "super-revisory tribunal" over state courts of competent jurisdiction.

■ Liens of judgments valid under federal or state law are not invalidated by the Bankruptcy Act, except where express provision or necessary implication so requires. City of Dallas v. Ryan, 5 Cir., 62 Fed.2d 959.

According to the record before me, the bankrupt made no attempt to plead payment or accord and satisfaction when he was sued on the note. Several years later, the judgment creditor intervened in the partition proceeding which was pending in a state court exercising full and complete equitable powers, seeking to enforce her judgment lien. The bankrupt was then afforded an opportunity to set up any equitable defenses against the enforcement of said judgment. At that late date, he did not claim payment, or accord and satisfaction, nor did he set up any equitable defense. He relied solely on an answer asserting that his property was a homestead and not subject to the lien of said judgment.

■ The bankruptcy court is a court of equity and exercises full and complete equity powers and jurisdiction. Pepper v. Litton, supra; Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645.

However, I do not understand that the bankruptcy court in the exercise of its general equity powers has any greater right to vacate or set aside judgments rendered by other courts of competent jurisdiction than are possessed by the State equity court in which the proceeding to enforce the lien in question had been pending for more than one year previous to the filing of the bankruptcy. If the bankrupt had any equitable defense to said judgment, he could have set up such defense in the enforcement proceeding in the State equity court.

The Referee, in setting aside and canceling the judgment held by the Superintendent of Banks, evidently relied on the rule laid down in Pepper v. Litton that the bankruptcy court has authority to cancel a judgment where it is not founded upon any real debt. I believe that the Referee fell into error in his construction and application of that decision. In my opinion, the ruling is that case does not authorize a bankruptcy court to set aside and cancel a state court judgment under the facts of the present case.

In Pepper v. Litton, the court clearly held that the doctrine of res judicata did not there apply because (1) there was not identity of parties—the litigation being between a trustee representing another creditor, and Litton—(2) there was not identity of issues. The court pointed out that under the narrow issue involved in the state court proceeding that the matters set up in the bankruptcy proceeding could not have been presented.

In that case there was no real debt—the alleged salary claims constituting the basis of the judgment were shown to be spurious. There Litton the owner of a one-man corporation, was shown to be engaged in a "planned and fraudulent scheme" [308 U.S. 295, 60 S.Ct. 248, 84 L.Ed. 281], to manipulate the affairs of such corporation in such a manner as to defeat the claim of a legitimate creditor. The fraudulent conduct continuing throughout the transaction, it was held that the bankruptcy court could set the judgment aside although it was obtained more than four months prior to bankruptcy. Furthermore, Litton, in the manipulation of his one man corporation, was acting in

a fiduciary relationship, and this alone was sufficient to authorize the bankruptcy court to disallow or subordinate his judgment claim against his own corporation.

In the present case, as has been demonstrated, the doctrine of res judicata does apply, there being an identity of parties and issues. The issues in the State court were broad enough to permit Redwine, the bankrupt, to set up the defenses which he now attempts to assert. Here there is a real debt. The bankrupt admits that he borrowed $2,900 from the bank. No equitable ground is here averred or shown that would authorize the Referee, in the exercise of his equitable powers, to set aside the judgment. In the present case no confidential relationship is shown that would authorize the disallowance or cancellation of the judgment.

The matters pointed out fully distinguish Pepper v. Litton from the present case. In my opinion, that decision is ample authority for holding that the judgment here attacked was res judicata of the defenses of payment and accord and satisfaction now being asserted for the first time in this court. While Pepper v. Litton reiterates the principle that a bankruptcy court exercises equitable jurisdiction, I do not understand that case to hold that a bankruptcy court can arbitrarily set aside a valid judgment rendered by a state court of competent jurisdiction. The holding there is to the effect that a bankruptcy court in the exercise of its equitable powers can disallow a claim based upon a judgment of a state court where fraud, collusion or other recognized equitable defenses are shown. That case does not hold that a defendant sued in a court of law can fail or refuse to set up his defenses and later re-litigate the issues or secure a new or second trial by merely going into bankruptcy.

The bankruptcy court has been held to be a court of exclusive and superior jurisdiction. Isaacs v. Hobbs Tie & Timber Co., supra; Baker et al. v. Gregory, 5 Cir., 111 F.2d 770. However, the bankruptcy court may yield jurisdiction to a state court on the grounds of comity. Baker et al. v. Gregory, supra.

A situation similar to the one here involved was presented in the case of Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 466, 75 L.Ed. 1060. In that case the question certified to the supreme court was as follows: "Where creditors have obtained and docketed judgments constituting liens on the real estate of defendant, and have instituted a creditors' suit in a state court to marshal and enforce the liens and sell the real estate subject thereto, does the bankruptcy of defendant occurring more than four months after the institution of the creditors' suit oust the state court of jurisdiction, or vest in the court of bankruptcy power to enjoin further proceedings in the state court?"

In answer to this question the court held that under the rule of comity the bankruptcy court should not enjoin or otherwise interfere with the proceeding to enforce the lien which was pending in the State court at the time of bankruptcy. Mr. Justice Roberts, writing for the Court, said:

"Following these cases the federal courts have with practical unanimity held that where a judgment which constitutes a lien on the debtor's real estate is recovered more than four months prior to the filing of the petition, the bankruptcy court is without jurisdiction to enjoin the prosecution of the creditor's action, instituted prior to the filing of a petition in bankruptcy, to bring about a judicial sale of the real estate.

"The trustee in bankruptcy may intervene in such suits to protect the interests of the estate."

In the case of In re White Star Refining Co., 5 Cir., 74 F.2d 269, 271, certiorari denied, Porter v. State of Texas, 294 U. S. 727, 55 S.Ct. 637, 79 L.Ed. 1257, Judge Sibley thus stated the rule: " * * * That the foreclosure of a lien not invalidated by bankruptcy on specific property undertaken in a state court with or without receivership is unaffected by the subsequent filing of a bankruptcy petition against the owner of the property, and that the bankruptcy court as to that property has not paramount jurisdiction but only concurrent jurisdiction and must observe due comity is now well settled."

While courts of bankruptcy have exclusive jurisdiction over the assets of the bankrupt in possession of the court, "they may yield jurisdiction to a state court on the grounds of comity." Baker et al. v. Gregory, supra [111 F.2d 771].

As is shown in the statement of facts, the judgment here involved was obtained in 1933, and the enforcement proceeding

in the State equity court was pending at the time of bankruptcy.

The judgment having been secured and recorded more than four months before bankruptcy, the recordation thereof having created a lien upon the property of the bankrupt, and the proceeding to enforce the lien having been pending more than a year prior to bankruptcy, the present case appears to be a proper one for the application of the rule of comity. The State court has already rendered a final decree in the enforcement proceeding denying the bankrupt's claim to homestead exemption, fixing the lien of the judgment upon his property, and ordering it sold for the satisfaction of such lien. This lien so established relates back to the date of the filing of the enforcement proceeding.

There is nothing left to be done in the State court proceeding except to sell the real estate and apply the proceeds to the satisfaction of the lien. The State court having denied the exemption and fixed the lien, I can conceive of no valid reason why these matters should be re-considered by this Court. An orderly administration of justice requires that the State court be permitted to conclude the matter.

The judgment creditor is entitled to proceed with her enforcement proceeding that was pending in the Circuit Court of Colbert County, Alabama, at the time bankruptcy intervened. The prayer of her petition seeking permission to proceed in the State court as against other property of the bankrupt not involved in said enforcement proceeding should be denied.

The Referee should appoint a trustee to receive any excess in the event the property involved in the enforcement proceeding sells for more than the amount of the judgment lien, and the trustee, of course, should take charge of and administer the remaining property of the bankrupt.

The judgment creditor has a lien upon the Town Creek warrants that were deposited as collateral. While it appears that these warrants are probably worthless, they should be surrendered to the trustee in bankruptcy. If these warrants are of any value, the Referee should direct the trustee to collect them or sell them, free of liens, with a proper provision for the preservation of the lien of the judgment creditor in the proceeds obtained from the warrants. Should the judgment creditor fail to realize the full amount of her claim

on the sale of the real estate by the State court and file proper claim in the bankruptcy court for a balance due, then the Referee can, upon hearing, apply the funds realized on said warrants, if any, to the extent necessary to satisfy any balance that may be shown to be due the judgment creditor.

## Conclusions of Law

I. The judgment upon which the judgment creditor's lien is founded is res judicata as to the defenses now asserted by the bankrupt.

II. No equitable ground is set up or shown which would authorize the bankruptcy court, in the exercise of its equitable powers, to set aside or cancel the judgment obtained by the Tennessee Valley Bank on November 8, 1933.

III. This is a proper case in which to apply the rule of comity, and the judgment creditor is entitled to proceed in the State court to foreclose her lien against the real estate allotted to the bankrupt in said State court partition proceeding, it appearing that the judgment was more than four months old and that the proceeding to enforce the lien of said judgment had been pending in the State court for more than a year prior to bankruptcy.

IV. The judgment creditor was entitled to have her petition to proceed in the State court granted insofar as it applied to the property involved in the State court partition proceeding in which the judgment creditor had intervened to enforce the lien of her judgment, but her prayer for permission to proceed in the State court as to any other property of the bankrupt should be denied.

V. The Referee should appoint a trustee to receive any excess in the event the property involved in the State court proceeding sells for more than the amount of the judgment creditor's lien and to administer the remaining property of the bankrupt.

VI. The town of Town Creek warrants held by the judgment creditor should be surrendered to the trustee in bankruptcy when appointed by the Referee, and if they are of any value, the Referee should direct the trustee to collect said warrants or sell them free of liens, making provision for the preservation of the judgment creditor's lien in the proceeds thereof.

VII. If the judgment creditor fails to realize the full amount of her claim on the sale of the real estate by the State court, and makes claim in the bankruptcy court for any balance due, the Referee can, upon hearing, apply the funds realized on said warrants, if any, to the extent necessary to satisfy any balance shown to be due the judgment creditor.

The decree of the Referee is set aside and vacated. Proper decree with instructions will be entered in accordance with the foregoing findings of fact and conclusions of law.