**In the Matter of Agregados de MANATÍ, Debtor.**

**No. B-87-71.**

United States District Court, D. Puerto Rico.

May 24, 1972.

Motion for Reconsideration Denied Sept. 1, 1972.

---

Otero Suro & Otero Suro, Rodrigo Otero Bigles, San Juan, Puerto Rico, for debtor.

Benjamín Rodríguez Ramon, Hato Rey, Puerto Rico, for Kane Caribbean, Inc.

## ORDER GRANTING MOTION TO STRIKE

TOLEDO, District Judge.

This case was commenced upon a petition filed by Agregados de Manatí, Inc., (hereinafter Manatí), on October 22, 1971, intending to be reorganized in accordance with Chapter X of the Bankruptcy Act, Title 11, United States Code, Sections 501–676.[1] After the usual jurisdictional allegations, petitioner asserted that it is engaged in the business of a sand and gravel pit and processing plant; that because of an attachment by one of its secured creditors, Kane Caribbean, Inc., (hereinafter Kane Caribbean) of certain assets indispensable for its business activities, it has ceased operations; that said attachment was the consequence of execution proceedings subsequent to stipulated judgments in repossession suits instituted by such creditor against the debtor, pursuant to the Conditional Sales Act of Puerto Rico, in the Superior Court of Puerto Rico, Arecibo Section, the real creditor thereon not being Kane Caribbean, but its assignee, Machinery Investment Co., Inc., (hereinafter Machinery); that, therefore, the said stipulated judgments were null and void. Manatí prayed for

---

1. Hereinafter to be cited without reference to the United States Code.

the approval of its petition, the appointment of a trustee or trustees, and the stay of the judicial proceedings formerly referred to.

Simultaneously with such petition, Manatí requested and that every day obtained, an ex-parte order staying Kane Caribbean from further continuing with the execution of such judgments, and specifically staying the public sale of the assets covered by the conditional sales contracts being judicially enforced.

Kane Caribbean, on November 11, 1971, moved to set aside the stay order mentioned and for the dismissal of debtor's petition, alleging that the lessor of debtor's business premises, one Francisco Sánchez, had rescinded the lease contract existing with debtor, who had knowledge thereof on the date of filing its petition, thus not having been filed in "good faith". Movant's motion was supported by a memorandum of the applicable statutory and case law. The debtor, on November 26, 1971, filed an

opposition to said motion, supported by the corresponding memorandum.

A few days thereafter Kane Caribbean filed a supplementary brief in support of its aforementioned motion, based on the authority of the judgment entered by this Court in the case of In the Matter of Corporación Hotelera de Puerto Rico (San Jerónimo Hilton), Debtor, 321 F.Supp. 1180 (D.C.1971), which held that opposition by holders of more than two-thirds in amount of secured claims against a debtor, made it unreasonable to expect that a plan of reorganization be effected, and that therefore, the "good faith" requirements of Section 142 of the Act (Section 141 in this proceeding) had not been met. Said creditor further moved under Rule 12(f) of the Federal Rules of Civil Procedure [2] to strike paragraphs 4, 5 and 7 of debtor's petition to stay suits,[3] claiming they contained immaterial and impertinent matter. In its brief accompanying this last motion, Kane Caribbean bottomed

2. Rule 12(f) of the Federal Rules of Civil Procedure, Title 28, United States Code, provides:

"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

For an extensive analysis on the propriety and applicability of a Rule 12(f) motion, see this Court's decision in the case of Gilbert v. Eli Lilly & Co., Inc., and Lord Electric Co. of Puerto Rico, Inc., 56 F.R.D. 116 (decision entered on May 19, 1972).

3. Paragraphs 4, 5 and 7 of Debtor's Petition to Stay Suits, read as follows:

"4. The aforesaid Stipulations were agreed upon by your petitioner and the judgments entered based on the duly recorded conditional sales contracts executed by and between the said Kane Caribbean, Inc. and your petitioner, which at the time your petitioner was made by said plaintiff to believe that it was the holder in good faith of said conditional sales con-

tracts, which had been previously sold, transferred and assigned to Machinery Investment Corp., a Minnesota corporation, in the voluntary petition for reorganization erroneously named as Machinery Investment Co., Inc.

5. Your petitioner has learned that the said sale, transfer and assignment from plaintiff Kane Caribbean, Inc. to Machinery Investment Corp., has never been revoked nor rescinded, whereupon the true and only vendor-creditor at the time the complaints were filed, the Stipulations signed, the judgments entered and the Writs of Repossession and of Execution sued was not plaintiff Kane Caribbean, Inc. but Machinery Investment Corp., and thus that all the said acts are null and void.

7. The granting of this petition, until the voluntary petition for reorganization under Chapter X herein is approved or dismissed, shall only prejudice plaintiff Kane Caribbean, Inc. if it were the true vendor-creditor as to the cost of publication of the Notice of Sales and the short time the said notice would be published if the voluntary petition is not approved and the stay order, if issued is not continued, whereas if the said sales are not stayed and enjoined, your petitioner will be financially destroyed."

its position on the fact that this Court is prevented from opening relitigation of creditor's interest or status as real party plaintiff in the repossession proceedings, firstly because to do so would turn this Court in a court for the review of proceedings of the Superior Courts of Puerto Rico, contrary to Rule 53.1(b) of the Rules of Civil Procedure for the Commonwealth of Puerto Rico, Title 32, Laws of Puerto Rico Annotated; and, secondly, on the doctrine of collateral estoppel by judgment, firmly established in accordance with local and federal case law.

On December 16, 1971, the parties filed a Stipulation of Facts, accompanied by various exhibits and on January 4, 1972, a hearing was held to consider the aforementioned motions, during which the Court heard oral arguments from counsel for both parties. The Court then requested the filing of briefs solely as to the issue of whether the motion to strike filed by Kane Caribbean, as a matter of law, should either be granted or denied.

After having fully read the mentioned briefs and the Stipulation filed by the parties, the Court is fully advised to rule on the premises.

In accordance with the Stipulation of Facts filed by the parties herein, Kane Caribbean as vendor and Manatí as vendee, executed conditional sales contracts for the acquisition by Manatí of certain machinery and equipment for use in its sand and gravel operation in Ciales, Puerto Rico. It appears from such Stipulation that after the said contracts had been assigned by Kane Caribbean to Machinery, the debtor Manatí, defaulted in its payments, thus causing the devolution of said contracts from Machinery to Kane Caribbean, (see Exhibits A and C of the Stipulation of Facts) and that proceedings for the repossession of the machinery sold were instituted by Kane Caribbean against Manatí before the Superior Court of Puerto Rico, Arecibo Section. After said proceedings had been filed, the parties then entered into stipulations, made a part of the Stipulation of Facts filed herein as Exhibits B and D, under which the parties stipulated that a repossession order be issued for the return to Kane Caribbean of the properties covered in mentioned contracts and that the said order was to be stayed upon agreement of the parties, in order to give the debtor the opportunity to pay its debts in accordance with the schedule of payments. It was also agreed that default by debtor would cause an immediate execution of the repossession orders, and it was finally stipulated that the judgments to be entered approving such stipulations would be final and unappealable ". . . from the moment same is pronounced and it will constitute a release and final settlement of the controversies existing between the parties". Judgments were entered approving such stipulations on May 6, 1971. In no occasion during the aforementioned steps taken before the Superior Court of Arecibo did Manatí raise the issue of Kane Caribbean's title to institute such proceedings. To the contrary, to all appearances, it always accepted as its secured creditor Kane Caribbean and no other company.

From the Stipulation of Facts filed, it also appears that as a consequence of further defaults by Manatí, including issuance to Kane Caribbean of a check without funds (Paragraph 7 of the Stipulations of Facts), Kane Caribbean was compelled to move for the execution of the judgments and the public sale of the personal properties encumbered in its favor. In no occasion between May 6, 1971, in which the judgments were entered, and October 26, 1971, which was the date for the first public sale of the mentioned properties, did Manatí question Kane Caribbean's title as its secured creditor nor otherwise filed before any court in Puerto Rico proceedings to set aside such judgments, upon any grounds whatsoever. It was not until this Chapter X was filed before this Court on October 22, 1971, that Manatí raised *for the first and only time*, the issue that Machinery and not Kane Caribbean was the real party in interest in such proceedings and consequently that

the judgments entered in Kane Caribbean's favor before the Superior Court of Arecibo, were null and void, and allegedly obtained by a fraudulent representation concerning title to the conditional sales contract enforced thereupon.

It appears from the conditional sales contracts executed by Manatí as vendee, back on April 1970, containing the assignment to Machinery, that Kane Caribbean remained liable to its assignee for defaults in payment by Manatí.[4] Moreover, on March 4 and 9, 1971, Machinery gave notice to Kane Caribbean of its desire to put an end to Manatí's repeated defaults, to the extent of returning to Kane Caribbean ". . . the original contracts covering Agregados de Manatí, Inc.'s equipment" (Stipulation of Facts, Exhibits I–A and I–B). The stipulated facts further show that Manatí dealt simultaneously with each one of those companies, without any preconception whatsoever that it may have been dealing with any one at odds with the other, as to the interest in the contracts in question. See, for example,

from the Stipulation of Facts, both inclusive, Exhibits J to N, this last one in particular, and compare the same with Paragraph 6 of the mentioned Stipulation, showing payment by Manatí directly to Kane Caribbean, notwithstanding the assignment to Machinery.

The Court is of the opinion that the debtor had the opportunity to set aside the stipulated judgments, if it believed them to be in any manner objectionable, in the local courts of Puerto Rico. According to Rule 49.2 of the Rules of Civil Procedure for the Commonwealth of Puerto Rico,[5] it could have also stayed the execution of the judgments in question, pursuant to Rule 56.1 of such Rules.[6] Moreover, if as the debtor asserts in its brief, it discovered the alleged fraud ". . . . after it had been induced to enter into stipulations for judgment with a party which was not the real party in intent", (page 8 of its brief) it could have also moved for a new trial under Rule 48 of the Rules of Civil Procedure for the Commonwealth of Puerto Rico.[7] Neither did debtor resort to this rule.

4. The assignment made by Kane Caribbean to Machinery (See Exhibit "A" and "C" of the Stipulation of Facts) states in part:
"* * * We hereby further warrant the payment promptly when due of each sum payable thereunder and the payment on demand of all unpaid balances in the event of non-payment by the customer, of any sum at its due date of any other default by the customer without first requiring assignee to proceed against said customer." See also Exhibit "O" and Paragraph 30 of the Stipulation of Facts.

5. Rule 49.2 of the Rules of Civil Procedure for the Commonwealth of Puerto Rico, Title 32, Laws of Puerto Rico Annotated, provides in part:
"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a judgment, order, or proceeding for the following reasons:
(1) Mistake, inadvertence, surprise, or excusable neglect;
(2) . . . (3) . . . (4) . .
(5) . . .
(6) Any other reason justifying relief from the operation of the judgment."

6. Under Rule 56.1 of the Rules of Civil Procedure for the Commonwealth of Puerto Rico, it is provided:
"In every action, before or after entering judgment, on motion of the claimant, the court may make such temporary order as may be necessary to secure the effectiveness of the judgment. The court may order the attachment, garnishment, the prohibition to alienate, the claim and delivery of personal property, receivership, an order to do or desist from doing any specific act, or it may adopt any other measure which it may deem advisable, according to the circumstances of the case, regardless of whether according to the previous proceedings, the remedy is ancillary to an action or must be obtained by an independent action. In every case in which a temporary remedy is sought, the court shall consider the interests of all the parties and shall enter judgment as substantial justice may require."

7. The last mentioned Rule provides in part:
48.1 Grounds
"A new trial may be granted on any of the following grounds:
(a) When there is discovered material evidence which, despite reasonable dili-

All the aforementioned circumstances, support our findings that Kane Caribbean's standing as real party in interest in the enforcement of the conditional sales contracts has already been adjudicated, and that even though we may, as a matter of law, have power to go beyond the findings of the Superior Court of Puerto Rico, as a matter of equitable principle we should refrain from doing so. This is the tenor of the case law applicable to the aforementioned set of facts.

■ Article 1204 of the Civil Code for the Commonwealth of Puerto Rico, Title 31, Laws of Puerto Rico Annotated, Section 3343, reads:

"Presumptions established by law may be destroyed by proof to the contrary, except in the cases in which it is expressly prohibited.

Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the res adjudicata.

In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

In questions relating to the civil status of persons, and in those regarding the validity of nullity of testamentary provisions, the presumption of the res adjudicata shall be valid against third persons, even if they should not have litigated.

It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of

prestations among those having a right to demand them, or the obligation to satisfy the same."

Likewise, Article 59 of the Law of Evidence of Puerto Rico, Title 32, Laws of Puerto Rico Annotated, Section 1793, states:

"The effect of a judgment or final order in an action or special proceeding before a court or judge of Puerto Rico, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows:

1. In case of a judgment or order against a specific thing, or in respect to the probate of a will, or the administration of the estate of a decedent, or in respect to the personal, political, or legal condition or relation of a particular person, the judgment or order is conclusive upon the title to the thing, the will, or administration or the condition or relation of the person;

2. In other cases the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding."

These two provisions establish a sound public policy towards the desirability that litigation may be finished some time, and that there may be a stage in which peace among litigants in civil actions may prevail. The public policy rationale which is at the bottom of this idea is, aside from putting an end to litigation, the necessity and convenience of acknowledging the dignity of the decisions of the courts and, furthermore, the wisdom of not submitting litigants to

gence, could not be discovered or produced at the trial.
(b) . . .
(c) When substantial justice so requires it.

The court may grant a new trial to all or any of the parties and on all or part of the issues.

two or more instances of harassment and burdening that presupposes litigating a matter more than once. Pérez v. Bauzá, 83 P.R.R. 213 (1961); Goldsmith v. M. Jackman & Sons, 327 F.2d 184 (C.C.A. 10, 1964).

In the case at bar, there is identity of litigants. Kane Caribbean is a secured creditor of the debtor Manatí. These two parties were the only ones involved in the civil actions which Kane Caribbean now prays as bars to Manatí's intents of relitigating the matters therein finally adjudicated. Hull Dobbs v. Superior Court, 81 P.R.R. 214 (1959). That the proceedings in this case and the former ones constitute different causes of action and, consequently, that the quoted articles might not be strictly applicable in this instance, we concede. Yet, even so, the facts that were adjudicated directly or indirectly in such former actions cannot be relitigated in this action by the very same parties. This Court is prevented from doing so under the doctrine of Collateral Estoppel by Judgment, firmly established by the Supreme Court of Puerto Rico and the Supreme Court of the United States. A few cases have so established. See to that effect, Long Corporation v. District Court, 72 P.R.R. 737 (1951); Riera v. Pizá, 85 P.R.R. 256 (1962); Pérez v. Bauzá, 83 P.R.R. 213, 217 and 218 (1961); Fuentes v. District Court, 73 P.R.R. 893–911 (1952); Isaac Sánchez v. Universal CIT Credit Corp., 95 P.R.R. 372 (1967); Capó v. Secretary of the Treasury, 90 P.R.R. 145 (1964) and Pereira v. Hernández, 83 P.R.R. 156 (1961).

This rule also applies to consent or stipulated judgments. 1–b Moore's Federal Practice, 2d ed., 4009; 49 C.J.S. Judgments §§ 403 and 429.

Debtors in Chapter X proceedings, in this case a debtor in possession, and trustees in ordinary bankruptcy proceedings, are bound by the general policy that pre-bankruptcy judgments which adversely bind the bankrupt likewise bind such debtors and the trustee. To that effect, see Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946); In re Redwine, 53 F.Supp. 249 (D.C.Ala.1944). This is so, even though the judgment against the bankrupt was a consent judgment, stipulated judgment, judgment by confession or default judgment. See Hyman v. McLendon, 140 F.2d 76 (4th Cir.), cert. denied, 322 U.S. 739, 64 S.Ct. 1055, 88 L.Ed. 1572 (1944) (consent or stipulated judgment); Fox v. McGrath, 152 F.2d 616 (2d Cir. 1945), cert. denied, 327 U.S. 806, 66 S.Ct. 966, 90 L.Ed. 1030 (1946) (stipulated judgment); In re Mercury Eng'r, Inc., 68 F.Supp. 376 (S.D.Cal. 1946) (default judgment).

In the quoted case of Heiser v. Woodruff, supra, the following factual situation was involved. During a bankruptcy proceeding, the validity of a default money judgment for $278,000, obtained against the bankrupt before bankruptcy, was challenged on the ground that the judgment had been procured by fraud, that is, by perjured allegations in the complaint and by perjured testimony as to the value of certain property allegedly converted by defendant, later bankrupt. Reversing the Referee, the District Court disallowed objections to creditor's claim because the issue of fraud had been previously adjudicated. The Court of Appeals reversed and in turn the Supreme Court of the United States reversed the Court of Appeals, and reinstated the judgment of the District Court. At 327 U.S. page 733, 66 S.Ct. page 856 of the opinion, Honorable Chief Justice Stone stated:

> ". . . we are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata which is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court. Baldwin v. Iowa State Traveling Men's Ass'n, 283

U.S. 522, 525, 526, 51 S.Ct. 517 [518], 75 L.Ed. 1244 [1246, 1247].

Before Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] it was recognized by this Court that, apart from the full faith and credit clause, a judgment duly rendered in one court will be recognized as res judicata in a suit between the same parties in a federal court."

At page 735, 66 S.Ct. at page 857 the following statement was made:

"In general a judgment is res adjudicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit. Cromwell v. County of Sac, supra, 94 U.S. [351] 352, 24 L.Ed. 195 [197]; Grubb v. Public Utilities Comm., supra, 281 U.S. [470] 479, 50 S.Ct. [374] 378, 74 L.Ed. 972 [979]; Chicot County [Drainage] Dist. v. Baxter State Bank, supra, 308 U.S. [371] 375, 60 S.Ct. [317] 319, 84 L. Ed. 329 [333, 41 Am.Bankr.Rep. (N. S.) 508]."

This Court has already passed on a more serious question than the one presently before the Court. In United States v. Rexach, 41 F.R.D. 180 (D.C. 1966), the former Clemente Ruiz Nazario, once Chief Judge of this Court, dismissed an action by the United States Government to set aside on grounds of fraud two judgments previously entered, wherein the federal tax liability of the defendant had been adjudicated for certain years. The Court then held that defendant's failure to list three contracts was an honest mistake made in good faith, and did not constitute extrinsic fraud, and that the Government's inability to include the contracts as part of its cases in determining defendant's tax liability, was not caused by any wilful, fraudulent concealment from defendant. The then Chief Judge made, at page 185 of the opinion, the following statements:

"I. The acts for which a court of equity will on account of fraud set aside or annul a judgment or decree between the same parties, rendered by a Court of competent jurisdiction, have relation to frauds, extrinsic or collateral to the matter tried by the first Court, and not to a fraud in the matter on which the decree or judgment was rendered.

II. The cases where such relief has been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has never been a real contest before the Court of the subject matter of the suit.

III. Fraud is regarded as extrinsic or collateral where it prevents a party from having a trial or from presenting his cause of action or his defense, or induces him to withdraw a defense, or operates upon matters pertaining not to the judgment itself but to the manner in which it was procured."

Contrary to debtor's thinking, we do not believe the rule of United States v. Throckmorton, 98 U.S. 61, 68, 25 L.Ed. 93 (1878) has been demonstrably modified. The Supreme Court of the United States adopted there the rule:

". . . . that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, *extrinsic or collateral*, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." (emphasis added).

We say it has not been modified, not only because our *Rexach* case, supra, follows the same line of thinking in *Throckmorton*, but, additionally, because the trend of judicial thinking so establishes.[8] After trying to reconcile

---

8. The debtor in the case herein relies heavily on the case of Publicker v. Shall-

cross, 106 F.2d 949 (3 Cir. 1939), to sustain his allegation that the rule of the

*Throckmorton* and Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891), in the context of varying interpretations from other courts, and from the United States Supreme Court itself in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) Moore, has emphasized:

> "But the above rationale is more of a proposed approach than it is a statement of the rule of the cases; for despite doubts expressed against *Throckmorton* and in favor of *Marshall*, the federal cases generally adhere, at least in statement, to the *Throckmorton* dichotomy of extrinsic and intrinsic fraud. And this is true rather generally in the state courts, although an occasional state will grant independent relief from both extrinsic and intrinsic fraud." (7 Moore's "Federal Practice" 615).

Such also is the rule in the local courts of Puerto Rico (See Municipio de Coamo v. Tribunal Superior, 99 D.P.R. 932 (1971) not yet translated into English).

Irrespective of our view as hereinbefore stated, if we were to read Marshall v. Holmes, as constituting an absolute modification of the rule contained in the former, as the debtor seems to urge us do in its brief, even so, *Holmes* seems not to have gone as far as the debtor believes. *Holmes* qualified its ruling to cases in "which the injured party could not have availed himself in a court of law . . .", thus giving rise to the intervention of the equitable arm of the court, at a time in which law and equity were two distinct forums. As we have stated before, this is not the case in this instance. Manatí was always aware of the existence of Machinery and its unwillingness to resort to local court remedies to complain of the alleged fraud in the obtaining of the stipulated judgments against it (Manatí) places its case wholly outside the *Holmes* ruling. Furthermore, *Holmes* can only be read in the context of the procedural aspect of removal to a federal court, which circumstance may have justified Mr. Justice Harlan's language and his overpassing *Throckmorton sub silentio*. This explains the following statement of his, 141

case of United States v. Throckmorton, supra, is no longer the law; but has been modified by the doctrine of Marshall v. Holmes, infra. An extensive study of the jurisprudential situation makes this court be of the opinion that the debtor is incorrect in his assertion. After the Third Circuit Court of Appeals' decision in the Publicker v. Shallcross, supra, case, the Supreme Court of the United States, has mentioned the *Throckmorton* doctrine in the cases of Hazel-Atlas Glass Co. v. Hartford Empire Co. infra, (1944); Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945) and Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946), without any mention to the effect that the doctrine of said case has been modified by the doctrine of the *Marshall* case. In the *Hazel-Atlas Glass Co.*, supra, case, no reference is made to any conflict between the *Throckmorton* and the *Marshall* decisions and both are cited with approval, even though the Supreme Court's attention was directly called by the Publicker v. Shallcross, case, to the fact that some of the Circuit Court of Appeals have held

there was a conflict between these decisions. See Hazel-Atlas Glass Co. v. Hartford Empire Co., supra, footnote number 1, at page 245. For a federal court decision which offers a very appropriate discussion of the *Throckmorton, Marshall, Publicker* and *Hazel-Atlas Glass Co.* cases, see Josserand v. Taylor, 159 F.2d 249, 34 C.C. P.A. 824 (1946). For other federal court decisions adopting the *Throckmorton* doctrine even after the *Publicker* decision, see: Myers v. Gardner, 361 F.2d 343, 346 (9 Cir. 1966); Midessa Television Co., Inc. v. Motion Pictures for Television, Inc., 290 F.2d 203, 204–205 (5 Cir. 1961); Johnson v. First National Bank in Wichita, Kansas, 223 F.2d 31, 34 (10 Cir. 1955); Cuthill v. Ortman-Miller Machine Co., 216 F.2d 336, 338 (7 Cir. 1954); Durham et al v. New Amsterdam Cas. Co., 208 F.2d 342, 344 (4 Cir. 1953); Dowdy v. Hawfield, 88 U.S.App.D.C. 241, 189 F.2d 637, 638 (1951); Chisholm v. House, 160 F.2d 632, 643 (10 Cir. 1947); Beneficial Loan Co. v. Noble, 129 F.2d 425, 427–428 (10 Cir. 1942); Lippmann v. Hydro-Space Technology, Inc., 235 F. Supp. 860–867 (D.C.N.J.1964).

U.S. at page 600–601, 12 S.Ct. at page 66 of the opinion:

"The case before us is unlike the two last cited. While the court, upon final hearing, would not permit Mrs. Marshall—being a party to the actions of law—to plead ignorance of the evidence introduced at the trial, it might be that relief could be granted by reason of the fact, distinctly alleged, that some of the necessary proof establishing the forgery of the letter was discovered after the judgments at law were rendered, and after the legal delays within which new trials could have been obtained, and could not have been discovered by her sooner. It was not, however, for the state court to disregard the right of removal upon the ground simply that the averments of the petition were insufficient or too vague to justify a court of equity in granting the relief asked. The suit being, in its general nature, one of which the circuit court of the United States could rightfully take cognizance, it was for that court, after the cause was docketed there and upon final hearing, to determine whether, under the allegations and proof, a case was made which, according to the established principles of equity, entitled Mrs. Marshall to protection against the judgments alleged to have been fraudulently obtained.

For the reasons stated we are of opinion that this suit was removable from the state court; and that the court below should have reversed the judgment of the eighth district court for the parish of Madison, and remanded the cause to the latter court with direction to set aside all orders made after the filing of the petition and bond for the removal of the suit into the circuit court of the United States, and to proceed no further in it."

In view of the foregoing reasons, it is the opinion of this Court that Kane Caribbean's motion to strike should be granted.

Wherefore, it is ordered, that Paragraphs 4, 5 and 7 of debtor's petition to stay suits and the corresponding Paragraphs of debtor's petition for reorganization under Chapter X of the Bankruptcy Act, be and the same hereby are stricken therefrom because they contain immaterial and impertinent matter.

It is so ordered.

## ORDER DENYING MOTION FOR RECONSIDERATION

The debtor Agregados de Manatí, Inc. has requested the reconsideration of the Order entered by this Court on May 24, 1972 granting the Motion to Strike filed by secured creditor Kane Caribbean, Inc. Under the terms of said Order, Paragraphs 4, 5 and 7 of debtor's petition to stay suits and the corresponding Paragraphs of its petition for reorganization under Chapter X of the Bankruptcy Act, were ordered stricken therefrom, because of containing immaterial and impertinent matter.

Debtor insists again in its main line of argument in this proceeding, to the effect that Machinery Investment Company, Inc., rather than Kane Caribbean, Inc., is the real secured creditor against the debtor herein.

The issue in question has been sufficiently examined by the Court in its mentioned Order and decided adversely to the debtor. After an exhaustive analysis of the stipulation of facts and the applicable statutory and case law, the Court can only reaffirm its ruling that the issue in question was lately passed before the Court and that the doctrine of collateral estoppel by judgment prevents us from reopening such issue for judicial inquiry. Moreover, this Court does not sit to review final judgments of the courts of the Commonwealth of Puerto Rico. To grant debtor's motion for reconsideration is tantamount to act in such a reviewing fashion, contrary to the applicable law, and furtherly, to the comity deserved by such Commonwealth courts.

In view of the foregoing, the Court hereby denies debtor's Motion for Reconsideration of its Order Granting Motion to Strike, dated May 24, 1972.

The parties are hereby notified that Kane Caribbean Inc.'s Motion to Dismiss the petition in this case will be heard on September 13, 1972, at 2:00 p. m.

It is so ordered.